NO. 07-99-0063-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 30, 2000

______________________________

IRON MOUNTAIN BISON RANCH, INC.,

RONALD THIEL D/B/A IRON MOUNTAIN RANCH OR D/B/A

WYOMING AGRI-PLEX OR D/B/A TERRY BISON RANCH AND 

JEFFREY TODD HOMKES D/B/A IRON MOUNTAIN BISON RANCH OR D/B/A

WYOMING AGRI-PLEX OR D/B/A TERRY BISON RANCH , APPELLANTS

V.

EASLEY TRAILER MANUFACTURING, INC., APPELLEE

_________________________________

FROM THE 31ST DISTRICT COURT OF HEMPHILL COUNTY;

NO. 5699; HONORABLE M. KENT SIMS, JUDGE

_______________________________

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

Appellants Iron Mountain Bison Ranch, Inc., and Ronald Thiel appeal from a judgment in favor of appellee Easley Trailer Manufacturing, Inc., awarding recovery for trailers manufactured by Easley and for which Easley was not paid.  Appellants urge that (1) appellee did not have a contract with either appellant; (2) promissory estoppel is an inapplicable theory of recovery under the facts; (3) quantum meruit is an inapplicable theory of recovery under the facts; and (4) the trial court did not have personal jurisdiction over either of them.  We reverse and remand as to appellant Thiel.  We reverse and render judgment sustaining the plea to the jurisdiction of appellant Iron Mountain Bison Ranch, Inc.

I.  BACKGROUND

At all times relevant, appellee Easley Trailer Manufacturing, Inc., (Easley) manufactured livestock trailers at its plant in Canadian, Texas.  Appellant Ronald Thiel (Thiel) was a resident of Wyoming who was involved in raising and selling bison.  Appellant Iron Mountain Bison Ranch, Inc., (Iron Mountain) was a Wyoming corporation.  Thiel was the majority shareholder and president of Iron Mountain.

In the summer of 1995, Craig Rosenthal (Rosenthal) visited the Terry Mountain Bison Ranch in Wyoming.  There he met J.T. Homkes (Homkes), who was conducting wagon rides on the Terry Mountain ranch.  Rosenthal was a factory representative of Easley, and had with him a trailer manufactured by Easley.  Through Homkes, also a defendant in the suit but not a party to this appeal, Rosenthal met Thiel.  Thiel was interested in the Easley trailer because it was well constructed.  Thiel eventually purchased an Easley trailer for use in his bison business.  Homkes was interested in selling Easley trailers.  Through Rosenthal, Homkes and Thiel ordered trailers and other products from Easley.  Thiel paid Easley for several trailers and the other products.  He refused to pay for six trailers which Easley manufactured based on orders placed by Homkes.  

Orders for the six disputed trailers were placed on various dates.  In taking orders for trailers, Easley typically used “quote sheets” to set out specifications and the price for the trailer to be built.  The quote sheets also showed who the order was for, the address of the ordering person or entity, and had a place for the ordering person or entity representative to sign.  The quote sheets for the six trailers involved in the lawsuit were “For” various entities.  The quote sheet for trailer number 2154 was made out to show the trailer being for Terry Bison Ranch, bore a date of August 11, 1995, and was signed by Homkes.  The quote sheet for trailer number 2155 appears to have been originally made out to show the trailer being ordered for Iron Mountain Bison, but an apparent correction indicates that the trailer was for Wyoming Agri-Plex, the sheet bore a date of September 11, 1995, and was signed by Homkes.   The quote sheets for trailers numbers 2156, 2174 and 2175 show the trailers being for Iron Mountain Bison, the sheets bore dates of September 11, 1995, and were signed by Homkes.   The quote sheet for trailer number 2177 indicates that the trailer was for Wyoming Agri-Plex, the sheet bore a date of October 2, 1995, and was not signed by anyone purporting to accept the order.  The address listed for each of the entities for which the six trailers were being built was 138 Iron Mountain Road, Cheyenne, Wyoming.  The telephone number and fax number listed for the receiving entity on each quote sheet were the same.     

Although actual delivery of the six trailers in dispute was questioned, bills of sale and manufacturer’s certificates of ownership showed sale to Wyoming Agri-Plex, a business name being used by Homkes.  The manufacturers’ certificates reflected a sale of each trailer to Wyoming Agri-Plex, transfer of title to Wyoming Agri-Plex and full payment received by Easley.  

Thiel testified at trial that at the beginning of the relationship with Easley, Rosenthal asked Thiel who would be paying for the trailers to be ordered.  Thiel told Rosenthal that Thiel would “front” the money for Homkes to pay for the trailers from Easley.  Thiel discussed his credit with Rosenthal and assured Rosenthal that Easley did not have to worry about Thiel’s credit.  Thiel also testified that he was aware Easley was looking to him to pay for the trailers.  Thiel knew that Rosenthal and Homkes would occasionally “sit down and come up with purchase orders, or acknowledgments.”  Thiel was present during some of the conferences between Homkes and Rosenthal.  Later during his testimony, Thiel maintained that his commitment to Rosenthal and Easley was only to “front” the money, or pay for, six trailers.  He claimed that he paid for the six trailers he had committed to pay for.

 Steve Shafer was Vice-President of Easley at the time Thiel and Homkes first came in contact with Rosenthal and became interested in Easley trailers.  Shafer was responsible for the sales, accounting, and office departments of Easley.  Shafer testified that Thiel’s commitment to pay was not limited to six trailers.  Shafer testified that, on behalf of Easley, he talked with Thiel on the telephone after Rosenthal’s first meetings with Thiel and Homkes.  Following his telephone conversation with Thiel, and with Thiel’s approval, Shafer had Thiel’s credit checked.  Based on the reports received as to Thiel’s creditworthiness, Easley extended 30-day payment credit terms to Thiel.  Easley did not check on Homkes’ credit. Nor did Easley check Iron Mountain’s credit, because, as Shafer testified, “At the time we had not heard of Iron Mountain Ranch and we were strictly dealing with Mr. Thiel.”

Shafer testified that his telephone conversation with Thiel also included a discussion of Thiel’s becoming a dealer for Easley.  Shafer told Thiel that Easley was very excited about having Thiel as a dealer.  At one time Easley allowed a trailer to be returned and agreed to refund the purchase price.  Homkes returned the trailer to the Easley factory in Canadian and asked that the refund be made out to him.  Before Easley would issue a check to Homkes, however, Shafer called Thiel to determine if issuing the refund to Homkes was acceptable to Thiel.  Thiel approved payment of the refund to Homkes, and Easley then refunded the trailer price to Homkes.  

Easley manufactured the trailers in question, and either had them delivered to Wyoming, or they were picked up by Homkes in Canadian, Texas.  It became apparent that Homkes was not forwarding money in payment for the trailers either to Easley or to Thiel. Thiel and Homkes then visited the Easley plant in Canadian.  In Canadian, Thiel and Homkes met with Shafer.  Thiel prevailed upon Shafer to release to Homkes two trailers which had been manufactured pursuant to written quotes.  Thiel also advised Shafer that a buyer could probably be located for one of the trailers.  Such a buyer was located by Thiel and later, because of Thiel’s efforts, purchased one of the trailers.  It was not disputed that Easley received the proceeds from the sale.  

When Thiel advised Easley that he was not going to pay for the six trailers for which Easley had not been paid, Easley sued.  The jury found for Easley against all three defendants on its theories of contract, promissory estoppel, and quantum meruit.  The jury also found an amount for attorney’s fees for services of Easley’s attorneys through trial and  appeal.  The jury found:

(1) Thiel, Iron Mountain and Homkes each agreed to purchase trailers from Easley, each failed to comply with the agreement, and Easley was damaged in the amount of $33,351.60.     

(2) Easley substantially relied to its detriment on promises by Thiel, Iron Mountain, and Homkes, and was damaged in the amount of $33,351.60 by its reliance.

(3) Easley performed compensable work for Thiel, Iron Mountain and Homkes, and the reasonable value of the work at the time and place performed was $33,351.60.

(4) reasonable attorney’s fees for services of Easley’s attorneys through trial and  appeal.

Appellants challenge the legal and factual support for each liability theory submitted to the jury.  They also challenge the form of submission and evidentiary support for the damages questions.  Finally, appellants urge that the trial court erred in failing to sustain their special appearances challenging jurisdiction.

II.  STANDARD OF REVIEW

A.  LEGAL SUFFICIENCY OF THE EVIDENCE

When appellants attack the legal sufficiency of an adverse finding on an issue on which they did not have the burden of proof, appellants must demonstrate on appeal that there is no evidence to support the adverse finding.  
Croucher v. Croucher
, 660 S.W.2d 55, 58 (Tex. 1983).  
An appellate court reviewing “no evidence” complaints may consider only the evidence and inferences that tend to support the finding and must disregard all contrary evidence and inferences.  
See
, 
e.g
.,
 
Continental Coffee Products v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); 
Cain v. Bain
, 709 S.W.2d 175, 176 (Tex. 1986).
  Only evidence and inferences which, viewed in the light most favorable to the finding being questioned, are to be considered.  
Davis v. City of San Antonio
, 752 S.W.2d 518, 522 (Tex. 1988).  Every reasonable inference is indulged in favor of the prevailing party.  
See
 
Associated Indem. Corp. v. CAT Contracting, Inc
., 964 S.W.2d 276, 285-86 (Tex. 1998) (citing 
Harbin v. Seale
, 461 S.W.2d 591, 592 (Tex. 1970)).  
A legal sufficiency point will be sustained when: (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. 
 
Merrell Dow Pharm., Inc. v. Havner
, 953 S.W.2d 706, 711 (Tex. 1999); 
Cecil v. Smith
, 804 S.W.2d 509, 510, n.2 (Tex. 1991).
  Stated differently, the legal insufficiency challenge must be overruled if the record contains any evidence of probative force to sustain the finding.  
Leitch v. Hornsby
, 935 S.W.2d 114, 118 (Tex. 1996). 

B.  FACTUAL SUFFICIENCY OF THE EVIDENCE

If a finding is challenged for factual sufficiency of the evidence, all of the evidence is reviewed, 
Lofton v. Texas Brine Corp
., 720 S.W.2d 804, 805 (Tex. 1986), 
both favorable to and contrary to the findings.  
In re King’s Estate
, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).  We reverse on the basis of factual insufficiency only if the verdict is so against the great weight and preponderance of the evidence that it is manifestly unjust.  
Id
.  If we sustain a factual insufficiency issue, we reverse and remand for a new trial.  
Id
.  In making our determination as to factual sufficiency assertions, we do not reweigh the evidence and set the verdict aside merely because we feel that a different result is more reasonable.  
Pool v. Ford Motor Co
., 715 S.W.2d 629, 634 (Tex. 1986). 
 

III.  ANALYSIS

The trial court did not specify the basis for its judgment in favor of appellee.  Appellants, therefore, appropriately seek to negate every ground on which the judgment can be supported.  We will consider the issues in the order presented by appellants.  

A.  CONTRACT

Appellants’ first issue challenges appellee’s contract claim on the basis that (1) there was no evidence of an express contract for the trailers; (2) appellee presented no document sufficient to satisfy the statute of frauds; (3) appellee’s pleadings did not support a claim that Homkes was an agent for appellants; and (4) the damages issue submitted an unpled theory and failed to segregate the damages as to the measures used to determine damages.  We agree that the damages issue was erroneous.  We disagree with appellants’ other contentions.

We first address the damages question.  Counsel for appellants specifically objected to submission of the damages question related to appellee’s breach of contract theory.  Appellants’ objection was that the question submitted an improper measure of damages for the contract theory, and that there was no proof of lost profits, which was one of the measures of damages which the question allowed the jury to use to find damages.
(footnote: 1)  

The manner in which the jury is charged is generally within the discretion of the trial court.  
Campbell v. C.D. Payne & Geldermann Sec., Inc.
, 894 S.W.2d 411, 420 (Tex.App.--Amarillo 1995, writ denied).  
The test for whether the trial court abused its discretion is whether the court acted without reference to any guiding rules and principles.  
Craddock v. Sunshine Bus Lines
, 134 Tex. 388, 133 S.W.2d 124, 126 (1939)
.  

A party objecting to a jury charge must point out the objectionable matter distinctly and set out the grounds of the objection.  
Tex. R. Civ. P.
 274.
(footnote: 2)  The purpose of the rule is to insure that trial courts are afforded timely opportunity to correct errors in the charge, by requiring objections to clearly designate the error and to explain the grounds for complaint.  
Castleberry v. Branscum
, 721 S.W.2d 270, 276 (Tex. 1986). 

The Texas Supreme Court has held that when, in the face of a timely and specific objection, a trial court submits a single broad-form liability question incorporating multiple theories of liability, some valid and some invalid, the submission is harmful error when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory.  
Crown Life Insur. Co. v. Casteel
, 22 S.W.3d 378, 388 (Tex. 2000). It is improper to allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant should be held liable on proper, legal grounds.  
Id
.  It is no less improper to allow assessment of damages against a defendant without a judicial determination that a factfinder actually found an amount assessed as damages on proper, legal grounds.  We thus hold that in the face of a timely and specific objection, submission of a single broad-form damage question incorporating multiple measures of damages, some valid and some invalid, is harmful error when the appellate court cannot determine whether the jury based its verdict on an improperly submitted invalid theory. 
See
 
id
. 

Appellants’ objection was sufficient to comply with TRCP 274 and to preserve error.  The damages issue allowed the jury to find damages based on either the unpaid contract price or profits lost by Easley.  The record contains legally insufficient evidence of lost profits to support submission of a jury question, or to support a jury finding as to lost profits.  We cannot determine whether the jury based its answer on speculation as to appellee’s lost profits.  The submission was harmful error and warrants reversal of the judgment unless the judgment can be based on other jury findings.  We sustain appellants’ first issue as to the contract claim.  

Next, we examine appellants’ assertions that appellee presented legally insufficient evidence of an express contract and are entitled to have judgment rendered in their favor on the contract claim. 

Each trailer forming the basis of appellee’s claim, except number 2177 (plaintiff’s exhibit 12), was represented by a detailed, written quote sheet signed by Homkes.  The signed quote sheets are legally sufficient evidence of a written agreement to satisfy requirements of the statute of frauds.  
See
 
Tex. Bus. & Com. Code Ann
. § 2.201 (Vernon 1994).
(footnote: 3)  In reviewing the entire record, we likewise conclude that the quote sheets, together with the testimony surrounding them, are legally sufficient evidence to support submission of questions to the jury on whether an express contract existed for each trailer.  The remaining questions on the contract claim are whether appellee pled a theory of and offered legally sufficient evidence to support a claim that Homkes was an apparent agent for Thiel and Iron Mountain at the time he signed the quote sheets.  First, addressing the pleading issue, we observe that appellee’s live pleading at the time of trial alleges that the conduct of Thiel and Iron Mountain “led Easley, as a reasonably prudent person, to suppose that Homkes had the authority to act on behalf of Thiel and Iron Mountain.”  

The purpose of pleadings is to give the adversary parties notice of each party's claims and defenses, as well as notice of the relief sought.  
Perez v. Briercroft Service Corp.
, 809 S.W.2d 216, 218 (Tex. 1991).  The general rule is that pleadings will be construed as favorably as possible to the pleader.  
Gulf, C. & S.F. Ry. Co., v. Bliss
, 368 S.W.2d 594, 599 (Tex. 1963).  

Although not using the term “apparent authority,” appellee’s allegation is sufficient  to give notice that Thiel and Iron Mountain faced a claim that Homkes had apparent authority to act for them.  TRCP 45; 
see
 
Chastain v. Cooper & Reed
, 152 Tex. 322, 331, 257 S.W.2d 422, 427 (Tex. 1953).  If appellants questioned what was being pled, they had the option of specially excepting and having the pleading clarified. 
See
 Rules 90, 91.

Next, based on the evidence delineated above and a complete review of the record, we conclude that appellee offered legally sufficient evidence to support its apparent agency theory as to Thiel.  We do not find evidence, however, that supports Homkes being an apparent agent for Iron Mountain Bison Ranch, Inc.  The record contains no evidence that anyone at Easley knew of the existence of a corporate entity called Iron Mountain Bison Ranch, Inc., prior to, or during the time Easley was taking orders for and building the trailers in issue.  To the contrary, Shafer affirmatively testified that Easley did not know of Iron Mountain Bison Ranch, Inc., when it was deciding to extend credit for the trailers.  Shafer was the business manager for Easley, and testified unequivocally that Easley was only interested in Thiel’s creditworthiness.  Some of the written quote sheets for the trailers are made out to Iron Mountain.  There is no evidence, however, that the reference was to the corporation, or that anyone on behalf of Easley considered Homkes to be acting on behalf of the corporation Iron Mountain Bison Ranch, Inc.  The trial court did not err in instructing the jury on apparent authority as to Thiel.  The instruction was erroneous as to Iron Mountain, and a judgment against Iron Mountain on the basis that Homkes was its apparent agent is not based on legally sufficient evidence.  

Appellants also urge in regard to their issue concerning the contract claim that appellee judicially admitted that it had been fully paid for the trailers in question.  The contention is based on appellee’s issuance and introduction of copies of bills of sale as to the trailers.  Each certificate stated that Easley transferred title of the subject trailer to Wyoming Agri-Plex, in consideration for a recited amount of money.  Appellants cite 
Seminole Pipeline Co. v. Broad Leaf Partners, Inc
., 979 S.W.2d 730 (Tex. App.--Houston [1
st
 Dist.] 1998, no writ) for the elements of a judicial admission. 

We do not disagree with appellants’ authority, but we disagree with appellants’ argument that appellee judicially admitted payment for the trailers via the bills of sale.  Appellants never claimed to have paid for the trailers in question.  Thiel testified that he refused to pay for the trailers.  He represented Iron Mountain at trial and throughout the lawsuit.  Iron Mountain did not plead or offer proof that it paid for the trailers.  Appellee’s witnesses testified that the trailers were not paid for.  The bills of sale were introduced through the testimony of Shafer, who explained that the documents were made out as they were to accommodate Easley’s dealers in reselling the trailers.  No attorney or representative of Easley deliberately, clearly and unequivocally maintained, testified or admitted that Easley had been paid for the trailers.  
See
 
id
. at 740.  The recitations in the bills of sale were not judicial admissions.  Appellants’ first issue is overruled in part and sustained in part.        

B.  PROMISSORY ESTOPPEL

By their second issue, appellants urge two reasons that judgment for appellee cannot be based on appellee’s promissory estoppel theory.  First, appellants assert that in a case involving statute of frauds
(footnote: 4) issues, such as this is, promissory estoppel is available only to enforce an oral promise to reduce to writing a promise otherwise unenforceable because of the statute of frauds.  Appellants allege appellee has made no claim that either appellant made an oral agreement which was the subject of a promise to be reduced to writing.  Next, appellants urge that the damages question was improperly submitted to the jury because of legally insufficient evidence to support a finding.

Appellee responds by urging that the written quote sheets are sufficient to satisfy the statute of frauds, and are some evidence of reliance damages.  In the alternative, appellee cites TB&CC § 2.201(c) which provides that receipt and acceptance of goods validates a contract otherwise in violation of the statute of frauds.  

We have previously concluded that the written quote sheets are sufficient to comply with the statute of frauds.  We overrule appellants’ first point under this issue.

As to damages, the jury was instructed to consider only the amount necessary to restore appellee to the position it would have occupied had it not acted in reliance on the promise made to it as inquired about in prior questions.  The instruction comported with damages recoverable under promissory estoppel.  In a claim for promissory estoppel, only reliance damages are allowed.  
Fretz Constr. Co. v. Southern Nat'l Bank of Houston
, 626 S.W.2d 478, 483 (Tex. 1981).  Damages for promissory estoppel are "not measured by the profits that such party's reliance led him to expect, but instead are limited to the amount necessary to compensate that party for a loss already suffered."  
Sun Oil Co. v. Madeley
, 626 S.W.2d 726, 734 (Tex. 1981).  The damages that may be awarded are those required to restore the promisee to his former position.  
See
 
Hart v. Moore
, 952 S.W.2d 90, 97 (Tex.App.--Amarillo 1997, pet. denied) (approving damages to reimburse the plaintiff for expenditures to restore the status quo).  The Texas Supreme Court has stated the reason for such damages measure:  "[w]here the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the promisee is to be allowed to recover no more than reliance damages measured by the detriment sustained.  Since the promisee in such cases is partially responsible for his failure to bind the promisor to a legally sufficient contract, it is reasonable to conclude that all that is required to achieve justice is to put the promisee in the position he would have been in had he not acted in reliance upon the promise."  
Wheeler v. White
, 398 S.W.2d 93, 97 (Tex. 1965).

As appellee notes in its brief, the proof it offered as to damages was the quote sheet price amounts and the bills of sale.  These were not represented to be expenditures, costs to produce the trailers or amounts to restore appellee to its position before it manufactured the trailers.  The quote sheet prices were purported to be merely the price agreed upon for manufacturing and sale of the trailers by appellee.  The evidence of reliance damages is legally insufficient.  Appellants’ issue is sustained. 

C.  QUANTUM MERUIT

In their third issue, appellants urge two reasons that the quantum meruit findings cannot support appellee’s judgment: (1) quantum meruit is an inapplicable legal theory under the facts of this case wherein “goods” are the subject of the transaction, and (2) appellee introduced legally insufficient evidence of damages recoverable in quantum meruit to support the jury finding.      

Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received.  
Heldenfels Bros., Inc. v. City of Corpus Christi
, 832 S.W.2d 39, 41 (Tex. 1992).  To recover under the doctrine of quantum meruit, a plaintiff must establish that:  1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient.  
Id
.  Generally, a party may recover under quantum meruit only if no express contract covers the services or materials furnished.  
Murray v. Crest Constr. Inc.
, 900 S.W.2d 342, 345 (Tex. 1995).  Therefore, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be precluded from recovering in quantum meruit if there is an express contract covering those services or materials, 
Truly v. Austin
, 744 S.W.2d 934, 936 (Tex.1988);  
Woodard v. Southwest States, Inc.
, 384 S.W.2d 674, 675 (Tex.1964), and if no exception to the principle applies.  
W & W Oil Co. v. Capps
, 784 S.W.2d 536, 537-38 (Tex.App.--Tyler 1990, no writ).  The  rule is applicable not only when the plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who benefitted from its performance.  
Id
. at 537.

Appellants cite no authorities for their proposition that quantum meruit is not available as a means of recovery just because goods are the subject of the underlying transaction.  Appellee, however, references 
Cunningham v. R.W. McPherson & Assocs., Inc.
, 392 S.W.2d 145 (Tex.Civ.App.--Waco 1965, writ ref’d n.r.e), and 
Best & Russell Cigar Co. v. William Reese Co.
, 210 S.W. 317 (Tex.Civ.App.--Fort Worth 1919, no writ), as authority for its position that quantum meruit applies to finished goods.  

The suit in 
Cunningham
 was precipitated by Cunningham Brothers’ (Cunningham) failure to pay for grain handling equipment which the jury found was installed at the request of Cunningham.  Claim was made that an express contract existed for Cunningham to pay for the equipment and installation charges.  The jury answered negatively as to an express contract.  In affirming judgment against Cunningham on the basis of quantum meruit, the court noted that “. . . the furnishing of goods and services at defendants’ instance which are knowingly accepted by him are elements of, and are necessarily referable to quantum meruit as a ground of recovery.”  
Cunningham
, 392 S.W.2d at 146. 

 In 
Best & Russell Cigar
, the subject of the suit was the price of a box of cigars shipped by the cigar company.  Suit was filed on the alternative theories of express contract and quantum meruit.  The appellate court reversed a judgment for one of the defendants because the trial court only submitted the issue of express contract: “[I]t is clear that the whole charge quoted excludes entirely any right of recovery in the plaintiff on the ground that [defendant], notwithstanding they had not purchased the cigars, had received them and used them, and were therefore liable for the reasonable value of the same.”  
Best & Russell Cigar
, 210 S.W. at 318.  

In the more recent case of 
W & W Oil Co. v. Capps
, 784 S.W.2d 537, Capps furnished what was described as “goods and services” for an oil lease, but was not paid.  The trial court entered judgment for Capps on the basis of quantum meruit.  The appellate court reversed; not because goods could not be the subject of a quantum meruit claim, but because the goods and services were the subject of an express contract.  Capps was limited to recovery on the contract.  
Id
. at 538.

Appellants do not assert or offer authority that the Texas Business and Commerce Code statutory provisions dealing with goods, 
see
 
TB&CC
 chapter 2, provide the exclusive remedies to persons furnishing goods to another and not receiving payment.  We are not prepared to so hold.  We conclude that the record now before us contains legally sufficient evidence for the trial court to have properly submitted to the jury, in the alternative, questions pertaining to an express contract for each of the six trailers in question, and to the extent appellee did not have express contracts, questions pertaining to quantum meruit.  
See
  
Best & Russell Cigar
, 210 S.W. at 318.  We further conclude that the sales prices reflected in the quote sheets as F.O.B. Canadian
(footnote: 5) are some probative evidence of the values of the trailers where they were built in Canadian, Texas. 

Appellants assert that the record does not contain evidence to support the jury finding of $33,351.60.  We agree.  Appellee was seeking $42,496.10 as payment for six trailers.  The jury found contract damages of $33,351.60.  Appellee is precluded from recovering quantum meruit damages for trailers which were the subject of an express contract.  The damages not attributable to an express contract, according to the jury, and therefore possibly recoverable on appellee’s quantum meruit claim, could not exceed the balance sought of $9,144.50.  We sustain appellants’ third issue.   

D.  JURISDICTION OVER APPELLANTS

Appellants challenge jurisdiction of the Texas courts over them.  Appellants claim that they are Wyoming residents and that no basis exists for Texas courts to assert in personam jurisdiction over them.  Appellee responds that appellants entered into contracts which were performable by appellee, at least in part, in Texas, and that Texas courts have jurisdiction over appellants based on specific jurisdiction and the Texas Long Arm Statute.  
See
 
Tex. Civ. Prac. & Rem. Code Ann
. § 17.042 (Vernon 1997). 

Appellants filed special appearances pursuant to Rule 120a, which the trial court overruled prior to trial.  The trial court did not state its reasons for overruling the special appearances.  Findings of fact were neither requested nor entered.  The jurisdiction question was not addressed in the final judgment.     

In a Rule 120a challenge to the jurisdiction of Texas courts, a defendant has the burden of proof to negate all bases of in personam jurisdiction.  
Kawasaki Steel Corp. v. Middleton
, 699 S.W.2d 199, 203 (Tex. 1985).  When reviewing a personal jurisdictional question, appellate courts consider all the evidence, including that adduced at trial and at the special appearance hearing.  
Vosko v. Chase Manhattan Bank, N.A.
, 909 S.W.2d 95, 99 (Tex.App.--Houston [14th Dist.] 1995, writ denied).  Appellate review is according to a factual sufficiency standard.  
Nikolai v. Strate
, 922 S.W.2d 229, 236 (Tex.App.--Fort Worth 1996, writ denied).  A factual sufficiency review requires review of all the evidence, 
Lofton
, 720 S.W.2d at 805, 
both favorable to and contrary to the findings.  
In re King’s Estate
, 150 Tex. at 664-65, 244 S.W.2d at 661. 

We have previously concluded that the evidence at trial was legally insufficient to sustain appellee’s claims against Iron Mountain on any asserted theory of liability.  We will not repeat that evidentiary review here, except to note that trial testimony and evidence showed clearly that appellee was not relying on Iron Mountain corporation when it accepted orders for and manufactured the trailers.  Some evidence submitted at the special appearance hearing would support a finding of personal jurisdiction of Texas courts over Iron Mountain.  When all the evidence is considered, however, as it must be, we conclude that the evidence is factually insufficient for the trial court to maintain jurisdiction over Iron Mountain.  We sustain Iron Mountain’s plea to the jurisdiction.

On the other hand, the evidence at trial and at the special appearance hearing is factually sufficient for the trial court to maintain personal jurisdiction over Thiel.  Thiel admitted dealing with appellee and its agents and employees in regard to trailers to be manufactured by appellee in Texas from the beginning of the relationship.  In controversy was the extent of Thiel’s commitment on the trailer orders and whether Homkes was his agent.  We overrule Thiel’s plea to the jurisdiction. 

IV.  CONCLUSION

Appellants pray that if the case is not reversed and rendered, and that if the only errors are of a factual sufficiency nature, then the case be remanded.  Considering the findings by the jury on the theories of express contract and contract damages, reflected in questions one through seven, and quantum meruit and quantum meruit damages, reflected in questions twelve through fifteen, we conclude that remand for is proper as to those issues.  Given the intertwined nature of appellee’s promissory estoppel theory and its other theories, we remand the promissory estoppel issue for a new trial in the interest of justice.  
Tex. R. App. P.
 43.3 (a),(b).
(footnote: 6)  
  

The judgment of the trial court is reversed.  Appellee’s claims against appellant Thiel are remanded for further proceedings. 
 Tex. R. App. P.
 43.3.  Judgment is rendered that the plea to the jurisdiction of appellant Iron Mountain Bison Ranch, Inc., is sustained and appellee’s claims against Iron Mountain Bison Ranch, Inc., are dismissed.  
Tex. R. App. P.
 43.2(c).

Phil Johnson

    Justice

Publish.

FOOTNOTES
1:
The jury question was as follows: 

What sum of money, if any, if now paid in cash, would fairly and reasonably compensate Easley Trailer Manufacturing, Inc. for its damages, if any, that resulted from such failure to comply?

Consider the following elements of damages, if any, and none other.

a)   the unpaid contract price; or

b)   lost profits that were a natural, probable and foreseeable

      consequence of Defendant’s [sic] failure to comply. 

Do not add any amount of interest on damages, if any.

Answer in dollars and cents, if any.

Answer: ____________.  

2:
A Rule of Civil Procedure will be referred to hereafter as “TRCP_.” 

3:
Sections of the Texas Business and Commerce Code will hereinafter be referred to as “TB&CC §_.”

4:
See
 TB&CC § 2.201.

5:
Testimony indicated that the prices on the quote sheets were for delivery by Easley at its plant in Canadian--”F.O.B. Canadian.”

6:
Except as specifically addressed, we express no opinion on whether the evidence is factually sufficient to support the jury findings, nor on the manner in which the jury was charged.