Affirmed and Opinion filed March 25, 2004









Affirmed
and Opinion filed March 25, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01154-CV

____________

 

JENNIFER K. MALONE
HESTER,
Appellant

 

V.

 

FRIEDKIN
COMPANIES, INC., GULF STATES TOYOTA, INC., GULF STATES FINANCIAL SERVICES,
INC., AND GULF STATES MARKETING, AN ASSUMED NAME OF FRIEDKIN COMPANIES, INC., Appellees

 



 

On Appeal from the 80th
District Court

Harris County, Texas

Trial Court Cause No. 98-17896

 



 

O P I N I O N








Appellant Jennifer K. Malone Hester
appeals from a judgment notwithstanding the verdict.  Hester sued her former employer, Friedkin
Adventure Companies (AFriedkin Adventure@), for breach of a
contract to pay her a bonus for a business suggestion.  She also sued Friedkin Companies, Inc. (AFriedkin Companies@), Gulf States
Toyota, Inc. (AGulf States Toyota@), Gulf States
Financial Services, Inc. (AGulf States
Financial@), and Gulf States Marketing, an assumed
name of Friedkin Companies, Inc., asserting a quantum meruit claim against
them.  A jury returned a verdict for
Hester against all the defendants.  The
defendants accepted the verdict against Friedkin Adventure, but moved to set
aside the verdict against the other defendants. The trial court granted the
judgment notwithstanding the verdict and this appeal followed.  We affirm.

I. 
Factual Background

Friedkin Adventure employed Hester as a
reservationist.  She booked photographic
safaris in Africa and Nepal.  During the
time period relevant to this lawsuit, Thomas Friedkin was the sole shareholder
of Friedkin Adventure as well as appellee Friedkin Companies.  He was a joint owner of Gulf States Toyota,
along with his son, Dan Friedkin.  Dan
Friedkin was the sole shareholder of Gulf States Financial.  Hester was not employed by any defendant except
Friedkin Adventure.  Hester contends that
Friedkin Adventure is a separate company and not part of any other defendant.

In an August 30, 1994 memorandum
distributed to AAll FAC Staff@CFriedkin Adventure
Staff, David Marek, a vice president of the company, wrote, AYour suggestions
to reduce costs can earn you additional cash as well.  Just submit your written suggestion, [sic] to
your supervisor or to Trish, [sic] for evaluation.  All employee=s [sic]
suggestions utilized, which result in a cost savings, will be awarded a
bonus.  The amount of the bonuses will
vary according to the size of the savings.@  

Hester submitted a suggestion to Mark
Brady, another Friedkin Adventure vice president, in September 1994. Her memo
reads, in relevant part, as follows:

In response to your memo dated
9/2/94 and that of David Marek dated 8/30/94 I would like to submit the
following suggestions for cost reductions. 
I believe my suggestions can be tested on a Apilot@ basis at little or no cost to
prove its worth and can save substantial costs for all The Friedkin Companies
(TFC) as well as FAC [Friedkin Adventure Company].

. . . 








SUGGESTION:       Use the E-mail services of the
information highway (Internet) via high speed fax/modems instead of fax
machines to substantially reduce the cost of telephone charges, staff costs and
related miscellaneous costs for TFC [the Friedkin Companies].  In the interim, while verifying the cost
savings of the Internet, . . . have TFC [the Friedkin Companies] personnel use
E-Mail daily in lieu of the fax machine.

Your memo identified international phone charges as the
major culprit in our communications costs and staff costs as another major
cost.  This suggestion can substantially
reduce both.  The total savings to all
TFC [the Friedkin Companies] could conceivably be in the millions of dollars
over the next few years.  (Sounds like a
new Lexus!!)     

Hester discussed her idea with Marek and
Brady, and Marek reported the suggestion to Frank Gruen, Friedkin Adventure=s president.[1]  Thereafter, in a October 14, 1994 memo
distributed to AAll FAC Staff,@ Marek wrote, A[Hester] has
submitted the idea with potentially the greatest cost savings to us.  Her idea is to access the >Internet= information
highway for our overseas communications. 
This idea has great potential.  We=ll keep you
informed as we work with [Hester] to see if we can make it happen.@  Hester subsequently engaged a consultant, and
the consultant met with Hester, Brady, Marek and two other Friedkin Adventure
employees to discuss the use of the internet. 
Gruen sent Marek to talk with Robert Asbill, an employee of Gulf States
Toyota, who had been researching use of the internet by Gulf States
Toyota.  Marek testified at trial that
Hester was the first person to suggest the use of the internet for e-mail by
Friedkin Adventure or the other companies. 
At some point in time, Marek told Hester that Gulf States Toyota would
research the use of the internet because Friedkin Adventure did not have the
manpower to do it.








In November of 1996, two years after
Hester made her suggestion, Friedkin Adventure began to use internet for
e-mail.  Prior to that, however, Friedkin
Adventure sold parts of its business to Marek, who left Friedkin Adventure in
March or April of 1996.  In August of
1996, Hester sent a memorandum to Wes Weder, who was in charge of the
suggestion program for Gulf States Toyota, asking for her bonus for the
suggested use of the internet for e-mail. 
She wrote, ADue to all the changes affecting Freidkin
Adventure Companies in the last year my incentive bonus seems to have been
overlooked.@ 
Brooks O=Hara, vice president of administration for
Gulf States Toyota, replied on October 17, 1996, and said

We have reviewed
you [sic] suggestion and it has merit. 
The problem now is identifying savings and benefit.  I will have Laura Taylor review to see if she
can come up with some ideas.  Sorry it is
taking so long but with most of FAC [Friedkin Adventure] split up it=s hard to
determine who can do what.  Please hang
in there!    

On a handwritten note, O=Hara asked Laura
Taylor, who had worked for Friedkin Adventure but then worked for Friedkin
Companies, to Areview this idea,@ and said, AIt slipped through
the cracks at FAC and [Hester] was never responded to.@  Hester subsequently was asked by Jacquie Dye,
an employee of Friedkin Adventure, to come up with an idea of cost
savings.  In November of 1996, Hester
estimated annual net cost savings for all the Friedkin Companies around $25.6
million.  She suggested a bonus of
$10,000 and a 1997 Toyota Avalon.  In
response, in 1997, Hester was asked to estimate cost savings for Friedkin
Adventure only.  In March of 1997, Hester
prepared a spreadsheet analyzing net cost savings for only Friedkin Adventure
(approximately $661,000), and she asked for a cash bonus of $30,000.  In that document, she complained about
excluding the other Friedkin entities: AExcluding the
numbers for GST & the other Friedkin companies makes little sense because
the suggestion is so successful, it should be strongly recommended that all
companies use the idea.@

Subsequently, in a memo on Friedkin
Adventure letterhead to O=Hara, Dye wrote, AThe Houston office
has seen considerable savings in many areas. . . .  She [Hester] indicated to me that [M]ark
Brady & David Marek said on numerous occasions that they had turned the
project over to [Gulf States Toyota] because everyone needed to benefit from
it.@  Dye also wrote, AThe suggestion has
incredible potential for all the companies. 
We know for a fact that staff at Wilshire [offices of Gulf States Toyota
and Friedkin Companies] use the Internet because they are requesting the
addresses to our remote offices. 
Wilshire even has their own Domain address and a web page on the
Internet for Toyota and Lexus.@








Ultimately, O=Hara sent Hester a
memo saying, AIn fact, analysis confirm [sic] that the
net impact of implementing the suggestion did not produce net savings of any
significance for Friedkin Adventure.@  Hester received $500.00 for her
suggestion.  Hester ended her employment
with Friedkin Adventure and brought suit against Friedkin Adventure and
appellees.  Hester pleaded both a claim
for breach of an express contract and a claim for quantum meruit.  She did not allege an alter ego theory and
there was no finding of alter ego.

The jury found liability under both the
breach of contract and quantum meruit questions.  For breach of contract, the jury awarded
$25,000.00 against Friedkin Adventure. 
The trial court rendered judgment on the jury=s breach of
contract answers and awarded Hester against Friedkin Adventure actual damages
of $25,000, plus prejudgment interest of $9,602.74 and postjudgment
interest.  The trial court rendered a
judgment notwithstanding the verdict on the jury=s quantum meruit
answers.  No party appeals the amount of
the damages awarded to Hester for her breach of contract claim against Friedkin
Adventure, and Friedkin Adventure is not a party to this appeal.

                                               II.  Issues Presented








Hester presents the following six issues
for our review:  (1) whether the
defendants waived their complaint that the contract between Hester and Friedkin
Adventure precludes quantum meruit recovery against the remaining defendants by
failing to secure a jury finding to that effect; (2) whether the contract at
issue included the defendants other than Friedkin Adventure; (3) whether an
action for quantum meruit, which requires restitution of the amount of the
benefit received, allows the plaintiff to recover damages based on the value of
the plaintiff=s services to the defendants; (4) whether
the trial court properly disregarded the testimony of Hester=s proffered expert
witness regarding the cost savings allegedly obtained by the defendants based
on implementation of Hester=s suggestion; (5)
whether the fact that Hester=s suggestion was
communicated by her immediate bosses to the president of Friedkin Adventure,
also an officer or director of the remaining defendants, and to at least one
employee of Gulf States Toyota, who handled computer technology for all the
defendants, proves that she is entitled to recover in quantum meruit against
the defendants other than Friedkin Adventure; and (6) whether the trial court
erred in overruling the plaintiff=s motion for
judgment on the jury verdict and in granting the defendants= motion for
judgment notwithstanding the verdict.

                                            III.  Standard of Review

The standard of review for a judgment
notwithstanding the verdict is the same as a directed verdict.  Rush v. Barrios, 56 S.W.3d 88, 94
(Tex. App.CHouston [14th Dist.] 2001, pet. denied)
(citing Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex.
1990)).  We will affirm a judgment
notwithstanding the verdict only if there is no evidence to support an issue,
or conversely, if the evidence establishes an issue as a matter of law.  Id. (citation omitted).  No evidence exists, and a judgment
notwithstanding the verdict should be entered, when the record discloses one of
the following:  (1) a complete absence of
a vital fact; (2) the court is barred by rules of law or evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a scintilla of evidence; or (4)
the evidence establishes conclusively the opposite of a vital fact.  Id. (citation omitted).  ATo determine
whether there is any evidence, we must review the record in the light most
favorable to the verdict, considering only the evidence and inferences that
support the verdict and rejecting the evidence and inferences contrary to the
verdict.@  Id. (citation omitted).  If there is more than a scintilla of evidence
to support the jury=s findings, the judgment notwithstanding
the verdict should be reversed.  Id.  (citations omitted).

IV. 
Analysis

Appellees assert that this entire appeal
can be resolved by answering the question of whether a plaintiff can recover
for the same alleged services under an express contract and in quantum
meruit.  We agree and therefore address
Hester=s first, second,
third, and fifth issues in our discussion of this one question.








Hester argues that she is not precluded by
her contract with Friedkin Adventure from recovering in quantum meruit against
the other Friedkin companies for their alleged use of the internet as a result
of her suggestion.  Hester, however,
ignores well-established Texas precedent holding to the contrary.  AQuantum meruit is
an equitable theory of recovery which is based on an implied agreement to pay
for benefits received.@  Iron
Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc., 42 S.W.3d 149, 159
(Tex. App.CAmarillo, no writ) (citing Heldenfels
Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992)).  A plaintiff must establish the following to
recover under the doctrine of quantum meruit: (1) valuable services or
materials were furnished, (2) for the person or entity sought to be charged,
(3) which were accepted, used, and enjoyed by the person or entity sought to be
charged, and (4) under such circumstances as reasonably notified the person or
entity sought to be charged that the plaintiff, in performing services or
furnishing properties, expected to be paid by the person or entity to be
charged.  Id. at 160 (citing Heldenfels,
832 S.W.2d at 41); see also Jones v. Cooper Indus., Inc., 938 S.W.2d
118, 126 (Tex. App.CHouston [14th Dist.] 1996, writ
denied).  This court has emphasized that A[t]o recover in
quantum meruit, the plaintiff must show that his efforts were undertaken for
the person sought to be charged; it is not enough to merely show that his
efforts benefitted the defendant.@  Economy Forms Corp. v. Williams Bros.
Constr. Co., Inc., 754 S.W.2d 451, 459 (Tex. App.CHouston [14th
Dist.] 1988, no writ) (citing Truly v. Austin, 744 S.W.2d 934, 937 (Tex.
1988)).  In this case, Hester did not
send her memo to any of the appellees, and none of the appellees requested that
she submit a cost savings suggestion to them. 
The suggestion was solicited by Friedkin Adventure, her employer, and
she submitted it only to Friedkin Adventure. 
None of the appellees promised her a bonus for the suggestion she
submitted to Friedkin Adventure.  Nor did
she inform any of those companies that she expected a bonus paid by them, in
addition to any bonus she received from Friedkin Adventure.  For these reasons, it does not matter that
Hester said in her memo that the suggestion could be used by appellees.  Nor does the fact that appellees had
overlapping officers with Friedkin Adventure alter this conclusion, as
discussed in more detail below.








Furthermore, a party may recover under
quantum meruit only if there is no express contract covering the services or
materials furnished.  Iron Mountain
Bison Ranch, 42 S.W.3d at 160 (citing Murray v. Crest Constr., Inc.,
900 S.W.2d 342, 345 (Tex. 1995)).  A
plaintiff seeking to recover the reasonable value of services rendered or
materials supplied will be precluded from recovering in quantum meruit if there
is an express contract covering those services or materials and if no exception
to the principle applies.  Id.
(citations omitted).  There are some
exceptions to this rule, none of which are applicable to this case.  See, e.g., W & W Oil Co. v.
Capps, 784 S.W.2d 536, 537B38 (Tex. App.CTyler 1990, no
writ) (noting that exceptions include if the contract is invalid, abandoned, or
partially performed without the fault of the party seeking to recover in
quantum meruit) (citations omitted).  AThe rule is
applicable not only when the plaintiff is seeking to recover in quantum meruit
from the party with whom he expressly contracted, but also when the
plaintiff is seeking recovery from a third party foreign to the original
contract but who benefitted from its performance.@  Iron Mountain Bison Ranch, 42 S.W.3d
at 160 (citing W & W Oil Co., 784 S.W.2d at 537B38) (emphasis
added).








We have applied the latter rule to
preclude recovery on a quantum meruit claim against a party foreign to the
plaintiff=s contract.  Jones, 938 S.W.2d at 126 (holding that
patent assignor could not recover royalties allegedly due under patent rights
agreement under doctrine of quantum meruit from party who acquired patent
rights from assignee, on grounds that assignor provided that party with
services or materials under agreement, where there was express contract which
covered patents and services to be provided, and assignor failed to show that
he actually provided any services after patents were subsequently
assigned).  Our sister courts also have
applied this rule to preclude recovery under quantum meruit.  See, e.g., Jupiter Enterps., Inc.
v. Harrison, No. 05-00-01914-CV, 2002 WL 318305, at *4 (Tex. App.CDallas March 1,
2002, no pet.) (not designated for publication) (stating that general
contractor could not recover under doctrine of quantum meruit against assignee
of real property, even though contractor=s contract was
with assignor, because assignee benefitted from contractor=s performance, and
Aunjust enrichment
rules are applicable not only when the plaintiff is seeking to recover for
unjust enrichment from the party with whom he contracted, but also when the
plaintiff is seeking recovery from a third party foreign to the original
contract but who benefitted from its performance@) (citations
omitted); Morales v. Dalworth Oil Co., Inc., 69 S.W.2d 772, 775 (Tex.
App.CFort Worth 1985,
writ ref=d n.r.e.) (holding
that installer of gasoline tanks and gasoline could not recover against landowner
for quantum meruit recovery when installer=s contract was
with lessees of property, and subject matter of implied contract was covered by
the valid express contract between installer and lessees).  Accordingly, we overrule Hester=s third issue.

Hester=s argument that
appellees waived this defense by not seeking a jury finding also is without
merit.  The case relied upon by Hester in
making this argument, Fortune Production Co. v. Conoco, Inc., 52 S.W.3d
671 (Tex. 2000), does not support her contention.  There, the court held that because there was
no evidence reflecting the terms of Conoco=s arrangement with
two of the plaintiffs who did not have enforceable contracts with Conoco, the
court could not tell the terms of the parties= agreements.  In that context, the court held A[w]hen the
existence of or the terms of a contract are in doubt, and there is a claim for
unjust enrichment, it is incumbent on the party disputing that claim to secure
findings from the trial court that an express contract exists that covers the
subject matter of the dispute.@  That holding does not apply in this case,
where the terms of Hester=s contract with Friedkin Adventure are not
in doubt.  The only question is whether
she can recover against parties foreign to the contract, and as we have held,
the answer to that question is no. 
Accordingly, we overrule Hester=s first issue.








We thus turn to Hester=s second and fifth
issues.  Hester does not contend that she
had a contract with appellees.  Her memo
was addressed only to Friedkin Adventure. 
Thus, we overrule Hester=s second issue to
the extent she claims that her contract expressly included appellees.  In her fifth issue, Hester argues, because
there were overlapping officers and directors of, as well as common ownership
interests in, Friedkin Adventure and appellees, she has a quantum meruit claim
against appellees.  This argument,
however, is contrary to her admission that Friedkin Adventure is a separate
company from appellees.  It is also not
supported by any pleading by Hester; Hester did not plead alter ego.  Furthermore, the existence of overlapping
officers and directors or common ownership does not support a quantum meruit
claim against a nonparty to a contract when the subject matter of the claim is
the subject of a valid written contract. 
See Bado Equip. Co., Inc. v. Bethlehem Steel Corp., 814 S.W.2d
464, 473 (Tex. App.CHouston [14th Dist.] 1991, no writ)
(holding that summary judgment was proper on unjust enrichment claim brought by
seller of cranes against purchaser, constructor of rig, corporation that
subsequently purchased rig, and second corporation which, along with
constructor, was joint owner of corporation that purchased rig because there
was an express contract covering goods and because there was no evidence indicating
that any of the defendants were made aware that the seller expected to be paid
by any of them other than the purchaser of the rigs).

In this case, Hester presented no evidence
that Friedkin Companies, Gulf States Toyota, Gulf States Financial or Gulf
States Marketing were aware in 1994 that Hester expected to be paid by them for
her suggestion that Friedkin Adventure use the internet for e-mail.  Hester has presented no evidence that her
efforts in preparing her 1994 memo suggesting use of the internet were
undertaken for Friedkin Companies or any other appellee.  To the contrary, her evidence conclusively
establishes she submitted her suggestion to her supervisors at Friedkin
Adventure, her employer, and she knew that none of the appellees had requested
that she submit a cost savings suggestion for any of them.  There is also no evidence that any of
appellees used Hester=s suggestion.  As we have said, Ait is not enough
to merely show that [her] efforts benefitted the [appellees].@  In any event, in this case, there is no
evidence that any of appellees benefitted from Hester=s suggestion that
Friedkin Adventure or any of the Friedkin companies should use the internet for
e-mail.  Accordingly, we overrule Hester=s fifth issue.








Because of our disposition of Hester=s first, second,
third, and fifth issues, we need not address her fourth issue regarding
damages. Further, having overruled Hester=s first, second,
third, and fifth issues, we conclude the trial court properly denied Hester=s motion for
judgment on the verdict and properly granted appellees= motion for
judgment notwithstanding the verdict. 
Accordingly, we overrule Hester=s sixth issue.

The judgment of the trial court is
affirmed.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

Judgment
rendered and Opinion filed March 25, 2004.

Panel
consists of Justices Yates, Fowler and Frost.











[1]  Gruen also was the vice president
of the Friedkin Companies and a member of its board, as well as the boards of
the other defendants.