NO. 07-04-0236-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 27, 2006



______________________________




RUBEN RUIZ, APPELLANT



v.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;



NO. 3334; HON. RON ENNS, PRESIDING



_______________________________



Before QUINN, C.J., REAVIS, J., and BOYD, S.J. (1)

 Appellant Ruben Ruiz challenges his conviction of murder. In one issue, he
contends the trial court erred in denying his request for an instruction to the jury on the
lesser-included offense of manslaughter. We affirm the judgment of the trial court.

 On February 16, 2003, the victim, Tammy Rene Benson, was at the El Rincon bar
in Cactus, Texas. She spoke to appellant with whom she had previously had a
relationship. Appellant, who was at the bar with his new girlfriend, Veronica Ontiveros, told
Benson that if she left the bar with another man, he would kill her. Benson left the bar
alone around closing at the same time as appellant and Ontiveros. Appellant had a gun,
which he shot at Benson as she left the parking lot and proceeded to a stop sign, where
she got out of her vehicle and spoke to appellant. He wanted her to meet him at a certain
residence and she agreed. Appellant then followed Benson while driving dangerously and
erratically behind her. When they arrived at the designated residence, Ontiveros grabbed
the gun and ran from appellant. He followed her and took the gun from her. Appellant
then confronted Benson and shot her in the chest. She died from her injuries.

 Appellant objected to the court's charge because it did not include an instruction on
the lesser-included offense of manslaughter. The court overruled that objection, and it is
that ruling which appellant complains of on appeal. A defendant is entitled to a charge on
a lesser- included offense if 1) the lesser-included offense is included within the proof
necessary to establish the offense charged, and 2) some evidence exists in the record that
if the defendant is guilty, he is guilty only of the lesser offense. Rousseau v. State, 855
S.W.2d 666, 673 (Tex. Crim. App. 1993). The State concedes that manslaughter is a
lesser-included offense of murder. Therefore, we need to determine if there is some
evidence in the record that appellant is guilty only of the lesser offense. In doing so, we
must consider all the evidence introduced at trial, whether by the State or appellant. Penry
v. State, 903 S.W.2d 715, 755 (Tex. Crim. App. 1995). Also, we may not consider the
credibility of the evidence and whether or not it conflicts with other evidence in determining
whether an instruction should be given. Id. It is not enough that the jury may disbelieve
crucial evidence pertaining to the greater offense; there must be some evidence germane
to the lesser-included offense for the factfinder to consider. Skinner v. State, 956 S.W.2d
532, 543 (Tex. Crim. App. 1997). Anything more than a scintilla of evidence is sufficient
to entitle a defendant to an instruction on a lesser-included offense. King v. State, 17
S.W.3d 7, 21 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). Nevertheless, the entire
record must be examined, rather than extracting certain evidence and examining it in a
vacuum. Enriquez v. State, 21 S.W.3d 277, 278 (Tex. Crim. App. 2000).

 The difference between murder and manslaughter is one of mens rea. To convict
of murder, a jury has to find that the defendant intentionally or knowingly caused the death
of an individual. Tex. Pen. Code Ann. §19.02(b)(1) (Vernon 2003); Richie v. State, 149
S.W.3d 856, 857 (Tex. App.--Amarillo 2004, no pet.). The mens rea involved in
manslaughter is one of recklessness. Tex. Pen. Code Ann. §19.04(a) (Vernon 2003);
Richie v. State, 149 S.W.3d at 857-58. A person acts recklessly when he is aware of but
consciously disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur. Tex. Pen. Code Ann. §6.03(c) (Vernon 2003); Schroeder v. State, 123
S.W.3d 398, 401 (Tex. Crim. App. 2003). As evidence of manslaughter, appellant relies
on the testimony of Ontiveros that appellant and Benson were struggling for the gun at the
time Benson was shot, Ontiveros believed the shooting to be accidental, appellant stated
he did not mean to shoot Benson, and after the shooting, appellant put the gun to his own
head. 

 However, Ontiveros was not allowed to answer the question as to whether she
believed the shooting to be accidental, although she did testify that she gave a statement
to police that appellant said it was an accident. A statement that the defendant did not
intend to kill the victim cannot be plucked out and examined without the context of the
entire record. Godsey v. State, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986); Martinez v.
State, 16 S.W.3d 845, 847 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd). Although
Ontiveros averred that Benson put her hands over appellant's hands just prior to the
shooting, there was also evidence that 1) appellant had threatened to kill Benson that
night, 2) he had previously shot at her that night, 3) he pursued her in his vehicle while
driving close to her bumper "like a maniac," 4) Ontiveros took the gun from appellant
because she was concerned that he would shoot Benson, 5) he retrieved his gun from
Ontiveros prior to confronting Benson and shooting her, 6) while he may have pointed the
gun at his own head at one point, he did not stay to assist Benson, and 7) the gun required
more than an average amount of force in the trigger mechanism to fire it. Additionally,
Ontiveros was standing behind appellant and did not see the actual shooting. This
evidence does not permit a rational trier of fact to find that appellant was acting only
recklessly. See Hernandez v. State, 895 S.W.2d 508, 512 (Tex. App.--Fort Worth 1995,
pet. ref'd) (an instruction on involuntary manslaughter was not required when the only
evidence of it was the testimony of a witness who did not see the actual shooting that
immediately before the shot, the defendant and the victim were shoving each other). 

 Because we find no error on the part of the trial court, the judgment must be and
hereby is affirmed.

 John T. Boyd

 Senior Justice

Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2005). 



on"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00332-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



JULY
18, 2011

 



 

CONCEPT GENERAL CONTRACTING, INC., D/B/A CONCEPT BUILDERS, BW AFFORDABLE
HOUSING, L.P., AND CAPITOL INDEMNITY CORP., APPELLANTS

 

v.

 

ASBESTOS MAINTENANCE SERVICES, INC., APPELLEE 



 



 

 FROM THE 222ND DISTRICT COURT OF DEAF
SMITH COUNTY;

 

NO. CI-05H-106; HONORABLE ROLAND D. SAUL, JUDGE



 



 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

 

 

OPINION

            Appellants,
Concept General Contracting, Inc. (Concept) and Capitol Indemnity Corp.
(Capitol), appeal a judgment awarding damages to appellee,
Asbestos Maintenance Services, Inc. (AMS), in an amount of $120,883.95.  We affirm the judgment of the trial court.

 

 

Background

            On
May 27, 2004, BW Affordable Housing, L.P. (BW), contracted with Concept to
renovate certain apartment units owned by BW in Hereford, Texas.  Concept, as general contractor for the
project, executed and filed a payment bond issued by Capitol.  As part of this project, Concept and AMS
entered into a subcontract for AMS to provide asbestos abatement for restricted
areas within 125 apartment units.  This
contract specifically limited the areas to be abated in a manner that would
allow AMS to utilize an abatement method that is less intrusive and less costly
than a full abatement.  Soon after AMS
began work on the project, Concept requested some additional remediation.  AMS gave Concept a quote for this additional
work, performed this additional work, and Concept paid AMS for this additional
work.

            While
AMS was performing the work identified in these two contracts, Jack Scheuerer, construction superintendent for Concept,
requested AMS perform additional abatement in certain units.  Concept began performing this additional
work, but the additions were so numerous that they dramatically enlarged the
scope of the project, and altered the means by which the abatement could be
performed.[1]  This extra work was billed to Concept as it
was performed by AMS.  For the first four
invoices, Concept paid for the extra work without objection.  However, somewhere around the fifth invoice,
Concept stopped paying for the extra work that AMS had performed.  For approximately eleven invoices, AMS
continued to do the extra work that was marked at the job site by Scheuerer, but AMS eventually ceased doing this work when
it determined that Concept was not going to pay for this extra work.  However, AMS continued to perform the work
delineated in the two contracts for some time. 
At some point in the project, AMS ceased working and left the work site
but stood ready to complete the contract work if and when recalled to the site
by Concept.  However, Concept did not
call AMS back to the work site.  Rather,
Concept contracted with another asbestos abatement company to complete the work
under the contracts as well as additional work that needed to be done.

            On
the basis of the unpaid extra work, AMS brought suit against Concept and
Capitol (collectively appellants). 
After a two-day trial, the trial court took the case under
advisement.  Nearly three years later,
the trial court entered its judgment awarding AMS $120,883.95 in damages,
post-judgment interest, and $25,000 in attorneys fees.  Concept and Capitol then filed a motion for
new trial, which was denied after hearing. 
Concept and Capitol also filed a request for findings of fact and
conclusions of law.  The trial court
entered findings of fact and conclusions of law.

            Appellants
present fifteen issues by this appeal. 
By their first two issues, appellants contend that the trial court erred
in awarding AMS recovery for quantum meruit because this was an undisclosed theory of
recovery.  By their third and fourth
issues, appellants contend that the trial court abused its discretion in
admitting documentary exhibits and photographs as business records.  By their fifth issue, appellants contend that
the trial court erred in finding appellants liable under a theory of quantum meruit
when AMS dismissed the proper party, the owner of the benefited property.  By their sixth, seventh, eighth, and tenth
issues, appellants contend that the evidence was factually insufficient to
support the trial courts judgment.  By
their ninth issue, appellants contend that liability under the theory of quantum meruit
was error because of the existence of express contracts covering the work
performed.  By their eleventh and
fifteenth issues, appellants contend that the trial court erred by failing to
comply with the requirements of Texas Government Code section 74.059(c)(2).  By their
twelfth issue, appellants appear to contend that the evidence established their
affirmative defenses of waiver or estoppel as a
matter of law.  By their thirteenth and
fourteenth issues, appellants contend that they established their counterclaim
as a matter of law and should, therefore, have been awarded these damages and
attorneys fees.  We will overrule each
of these issues, and affirm the judgment of the trial court.

Issues 1 & 2: Failure to Disclose
Theories of Recovery

            By
their first two issues, appellants contend that the trial court abused its
discretion in admitting evidence to support AMSs quantum meruit and payment bond theories
of recovery because AMS failed to expressly disclose these theories in response
to a request for disclosure.  Appellants
contend that, under Texas Rule of Civil Procedure 193.6(a), AMSs failure to
specifically identify these theories of recovery in its disclosure prevents AMS
from introducing evidence to support these theories.  AMS responds that each of its three petitions,
including its live pleading, included claims for quantum meruit damages and recovery from
the payment bond, and that pleading these theories of recovery is sufficient.

            The
appellants contention is premised entirely on AMSs failure to specifically
disclose the theories of recovery under quantum
meruit and the payment bond in response to
appellants request for disclosure of [t]he legal theories and, in general,
the factual bases of your claims or defenses. 
AMS responded to this request by disclosing that, 

Plaintiff contracted with Concept General Contracting, Inc. to perform
asbestos abatement services, and performed all services requested until it
became apparent that Concept was refusing to pay for same, at which time work
was suspended pending resolution of outstanding receivables.  Thereafter, Concept requested that plaintiff
remove its remaining materials from the job.

Appellants contend that AMSs failure
to explicitly disclose that it was seeking recovery under the theory of quantum meruit
and the payment bond provided by Capitol triggers the exclusionary provision of
Texas Rule of Civil Procedure 193.6 to prevent AMS from offering any evidence
to support these theories of recovery.  See
Tex. R. Civ. P. 193.6(a).

            This
Court finds it extremely significant that the record reflects that both
theories of recovery were always pled by AMS as theories upon which it sought
recovery from appellants.  Notice that a
plaintiff is pursuing a particular theory of recovery generally must come from
the pleadings.  See Cunningham
v. Parkdale Bank, 660 S.W.2d 810, 812 (Tex. 1983)
(pleadings define the issues at trial and give opposing party sufficient
information to enable him to prepare a defense).  Appellants do not contest that each of these
theories of recovery were properly pled by AMS nor did they file any special
exceptions to AMSs pleadings.  Thus,
appellants were afforded appropriate notice that AMS intended to pursue
theories of recovery in quantum meruit and under the payment bond.

            Further,
while failures to comply with requests for disclosure result in automatic
exclusion of the non-disclosed evidence, absent proof of good cause or lack of
unfair surprise or unfair prejudice, see Tex. R. Civ. P. 193.6(a); Phan
v. Addison Spectrum, L.P., 244 S.W.3d 892, 899 (Tex.App.Dallas
2008, no pet.), properly pled claims for affirmative relief, as opposed to
withheld evidence, are not abandoned or waived by a partys failure to
expressly identify those claims in a response to a request for disclosure.[2]  See Killam
Ranch Props., Ltd. v. Webb County, No.
04-08-00105-CV, 2008 Tex.App. LEXIS
8682, at *3-*5 (Tex.App.San Antonio Nov. 19, 2008,
no pet.) (mem. op.) (holding failure to respond to discovery request not an abandonment
of properly pled claim for attorneys fees). 


            Because
the live pleadings of AMS provide notice of its intent to pursue recovery under
the theories of both quantum meruit and the payment bond and because its failure to expressly identify those theories in its responses
to discovery requests are not an abandonment of those claims, we
overrule appellants first two issues.

 

 

Issues 3 & 4: Business Records

            By
their third and fourth issues, appellants contend that the trial court abused
its discretion by admitting certain documents and photographs as
unauthenticated business records.  The
documents constitute AMSs Exhibits Five through Nineteen and appear to be
records relating to the work that AMSs employees performed on the BW
project.  The photographs, AMSs Exhibit
Twenty, portray various stages of work performed in unidentified apartment
units.  Appellants contend that the
challenged evidence was not properly authenticated and constitutes hearsay for
which AMS has failed to establish any applicable exception to the hearsay
rule.  AMS responds that the testimony of
Jack Coiner, an owner of AMS, established each of the requisites to qualify the
challenged evidence as business records, which are excepted
from the hearsay rule.  See Tex. R. Evid.
803(6).

            Evidentiary
rulings are committed to the sound discretion of the trial court.  Bay Area Healthcare
Group, Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex.
2007).  A trial court abuses its
discretion when it acts without reference to any guiding rules and
principles.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  However, even if a trial court abuses its
discretion by improperly admitting evidence, reversal is warranted only if the
error probably caused the rendition of an improper judgment.  See Tex.
R. App. P. 44.1; Bay Area Healthcare, 239
S.W.3d at 234.  In such an
instance, an appellate court reviews the entire record and requires the
complaining party to demonstrate that the judgment turns on the particular
evidence admitted.  Bay Area
Healthcare, 239 S.W.3d at 234.

            Evidence
is authenticated by proof that the challenged evidence is what its proponent
claims it to be.  See Tex. R. Evid.
901(a).[3]  Hearsay is defined as a statement, other than
one made by the declarant while testifying at trial
or hearing, offered in evidence to prove the truth of the matter asserted.  Rule 801(d).  Generally, hearsay is not admissible in
evidence.  Rule 802.  However, there are a number of exceptions to
this general rule, including the business records exception found in Rule
803(6).  For evidence to be admissible as
a business record, the record must have been made at or near the time that the
recorded event occurred by a person with knowledge of the event if the record
was kept in the course of a regularly conducted business activity as shown by
the testimony of a custodian of the record or other qualified witness.  See Rule 803(6).  

            In
the present case, appellants objected to the challenged evidence as not having
been properly authenticated by a person with personal knowledge of the contents
of the evidence and as violating the hearsay rule.  AMS presented testimony from Coiner that the
evidence was made at or near the time that the work was performed by a person
with knowledge of the work performed and that these records were kept in the
ordinary course of business.  Further,
Coiner testified that he was the custodian of the challenged records.

            Coiner,
during voir dire, identified each document in
Plaintiffs Exhibit Five, which appellants treated as representative of
Exhibits Five through Nineteen, as well as identifying what the photographs
contained in Exhibit Twenty portrayed. 
Coiners testimony that the evidence accurately portrays what AMS claims
it portrays, which is the records and photographs from the BW project that were
compiled during work on the project, is sufficient evidence to satisfy the
authentication requirement of Rule 901(a), regardless of whether Coiner had
personal knowledge of the contents of this evidence.  See Kirwan
v. City of Waco, 249 S.W.3d 544, 549 (Tex.App.Waco
2008), revd on other grounds, 298
S.W.3d 618 (Tex. 2009).  Thus, we find
the challenged evidence to have been properly authenticated and that the trial
court did not abuse its discretion in admitting the evidence over appellants
authentication objection.

In regard to appellants challenge to
whether AMS established the business records exception to the hearsay rule,
Coiner testified to each of the requisites to establish the evidence as
business records under Rule 803(6). 
However, appellants again contend that Coiner did not have personal
knowledge of the information contained in the records.  But, for a witness to establish the business
record exception, he need not have been the records creator or have any
personal knowledge of the contents of the record; rather, the witness need only
have personal knowledge of the manner in which the records were prepared.  Brooks v. State, 901
S.W.2d 742, 746 (Tex.App.Fort Worth 1995, pet. refd).  We
conclude that Coiners testimony established the requisites for application of
the business records exception, and, therefore, that the trial court did not
abuse its discretion in admitting the evidence over appellants hearsay
objection.

Because the trial court did not abuse
its discretion in admitting AMSs Exhibits Five through Twenty over appellants
authentication and hearsay objections, we overrule appellants third and fourth
issues.

Issue 5: Proper Party

            By
their fifth issue, appellants contend that the trial court erred in awarding
damages to AMS against Concept and Capitol because neither appellant owned the
apartment units and, therefore, could not be liable for quantum meruit damages.  AMS responds contending that Concept is the
proper party against whom quantum meruit damages should be assessed because it was
Concept, rather than the owner of the apartment complex, that requested the
extra work.

            In
its original petition, AMS named the owner of the apartment units, BW, as a
defendant.  However, in its subsequent
amended petitions, AMS dropped BW as a defendant.  On this basis, appellants cite Truly v.
Austin, 744 S.W.2d 934, 937 (Tex. 1988), for the proposition that [c]entral to the contractors right to recover in quantum meruit
is the owners acceptance and retention of the benefits arising as a direct
result of the contractors partial performance.  Interpreting this quoted portion of Truly as literally as possible, appellants contend
that it is only the owner of the benefitted property that can be held liable
under the theory of quantum meruit.  However,
the Truly court makes clear that, to recover in quantum meruit, the plaintiff must show
that its efforts were undertaken for the person sought to be charged.  Id. 
Incidental benefits to other parties do not give rise to quantum meruit
claims against those third-party beneficiaries. 
See id.; Bashara v.
Baptist Meml Hosp. Sys., 685 S.W.2d 307, 310
(Tex. 1985); see also Sourignavong
v. Methodist Healthcare Sys., 977 S.W.2d 382, 385 (Tex.App.Amarillo 1998, pet. denied).  

            In
the present case, the evidence is clear that AMS contracted with Concept, as
general contractor, to provide specific asbestos abatement services.  The evidence does not establish that AMS ever
dealt with BW directly.  Further, all of
the extra work that was requested was at the direction of Scheuerer,
Concepts construction superintendent for the project.  Thus, it was Concept, rather than BW, for
whom AMS performed the extra work.  See
Bearden Investigative Agency, Inc. v. Melvin, No. 2-02-078-CV, 2003 Tex.App. LEXIS 957, at *17-*18 (Tex.App.Fort Worth Jan. 30, 2003, no pet.); Fidelity Savs. & Loan Assn v. Morrison & Miller, Inc., 764 S.W.2d 385, 387-88 (Tex.App.Beaumont
1989, no writ). 
Further, evidence was presented that Concept needed AMSs asbestos
abatement, including the extra work, in order for Concept to complete its
general contract with BW.  Therefore, the
record establishes that the extra work performed by AMS was for the benefit of
Concept, and was not an incidental benefit to a third-party.  

As such, we conclude that AMS could
properly assert a claim of quantum meruit against Concept, and overrule appellants fifth
issue.

Issues 6, 7, 8, & 10: Factual
Sufficiency of the Evidence

            By
appellants sixth, seventh, and eighth issues, appellants contend that the
evidence is factually insufficient to support the quantum meruit elements that AMS provided
appellants valuable services or materials (issue six), AMSs work benefited
appellants (issue seven), and Concept accepted services or materials from AMS
(issue eight).  By their tenth issue,
appellants contend that the evidence is factually insufficient to support the
trial courts judgment against Capitol under the payment bond.  Each of these issues challenge explicit
factual findings made by the trial court.[4]  

Standard of Review

            An
assertion that the evidence is factually insufficient to support a fact finding
means that the evidence supporting the finding is so weak or the evidence to
the contrary is so overwhelming that the answer should be set aside and a new
trial ordered.  Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).
 In reviewing factual sufficiency, the
reviewing court must consider, examine, and weigh all of the evidence in the
record.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998).  In doing so, the court does not consider the
evidence in the light most favorable to the finding; instead, the court
considers and weighs all the evidence, and sets aside the disputed finding only
if it is so contrary to the great weight and preponderance of the evidence as
to be clearly wrong and unjust.  Id. at 407; Gooch v. American Sling Co., 902 S.W.2d
181, 184 (Tex.App.--Fort Worth 1995, no writ).

Quantum Meruit Claim

            Quantum meruit
is an equitable theory of recovery which is based on an implied agreement to
pay for benefits received.  Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41
(Tex. 1992); Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.,
42 S.W.3d 149, 159 (Tex.App.Amarillo 2000, no pet.).  To establish a claim for quantum meruit damages in Texas, a
plaintiff must prove that it (1) provided valuable services or materials, (2)
for the benefit of the defendant, (3) that were accepted by the defendant, and
(4) the defendant had reasonable notice that the plaintiff expected compensation
for the services or materials.  Heldenfels Bros., Inc., 832
S.W.2d at 41; Iron Mountain Bison Ranch, 42 S.W.3d at
159-60.  Thus, by their sixth through
eighth issues, appellants challenge the factual sufficiency of the evidence
supporting the trial courts findings of fact that AMS proved the first three
elements of its quantum meruit claim.  

            Appellants
challenge the sufficiency of the evidence proving that the extra work performed
by AMS was a valuable service or material. 
Appellants contention reiterates their complaints about the evidence
addressed in issues three and four, and also contends that AMS failed to follow
appropriate procedures for obtaining approval to perform the extra work.  However, a review of appellants argument
makes clear that they are not disputing that AMS performed valuable work that
was outside the scope of the contract.[5]  Rather, appellants contention relates to
whether AMS is entitled to payment for the extra work that was performed, and
the appropriate amount of value provided by AMS through its extra work.  The record establishes that Scheurer requested that AMS perform extra work that
exceeded the scope of the work that AMS and Concept initially agreed upon.  Further, while there was some dispute
regarding exactly how much extra work was performed and the value of this extra
work, there is no evidence that denies that AMS performed some work that
exceeded the scope of the initial agreements and that this extra work was
valuable.  Thus, we cannot agree with
appellants contention that the evidence was factually insufficient to
establish that AMS provided valuable services or materials to Concept.  We overrule appellants sixth issue.

            Appellants
also challenge the factual sufficiency of the second element of AMSs quantum meruit
claim, that Concept benefited from AMSs extra
work.  By this issue, appellants simply
reiterate their contention presented in issue five, that any benefit from AMSs
extra work flowed to the owner of the property, BW, and not to appellants.  However, as addressed above in analysis of
appellants fifth issue, the evidence that Concept requested and benefitted
from the extra work performed by AMS is not so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust.  We overrule appellants seventh issue.

            Finally,
appellants challenge the sufficiency of the evidence to establish that Concept
accepted the extra work performed by AMS. 
Appellants contend that the evidence establishes that, after August 18,
2004, Concept consistently refused to accept the extra work provided by AMS by
limiting payment of invoices to only those charges attributable to work
performed under the initial agreement. 
Concept contends that it requested backup documentation to support the
extra work, and that it conveyed to AMS that this backup was required before
Concept could accept the extra work. 
While the record does evidence that Concept stopped paying for extra
work after August of 2004 and that it requested backup documentation to support
AMSs extra work, the evidence also shows that Scheurer
continued to request AMS to perform extra work after August of 2004 and that
the extra work performed by AMS was necessary for Concept to complete its
contract with BW.  Thus, while there is some
evidence that appellants did not accept AMSs work after August 18, 2004, we
cannot conclude that the trial courts finding that Concept accepted the extra
work performed by AMS after August of 2004 is so against the great weight and
preponderance of the evidence as to be clearly wrong and manifestly
unjust.  We overrule appellants eighth
issue.

Payment bond

            By
their tenth issue, appellants contend that the evidence is factually
insufficient to support the trial courts judgment against Capitol.  Even though the trial court found that all
notice requirements under the payment bond had been satisfied by AMS,
appellants point to the testimony of Mark Gross, Concepts president and owner, that AMS failed to provide the requisite notice to
assert a claim against the payment bond. 
AMS responds contending that the terms of the bond except
a party in direct contract with Concept from being required to provide notice
of suit.  Thus, according to AMS, there
was no notice requirement applicable to AMS, who was in direct contract with
Concept, and the trial courts finding that all notice requirements have been
satisfied is sufficient as a matter of law.

            Reviewing
the arguments of appellants in their tenth issue, it is clear that their
factual sufficiency challenge rests on an unstated premise, that the payment
bond in issue has a notice requirement that applies to AMS.  A review of the record reveals that the
evidence does establish that AMS did not provide Concept notice of its intent
to sue.  The terms of the payment bond
provide that, No suit or action shall be commenced hereunder by any claimant:
. . . unless claimant, other than one having direct contract with the
Principal, shall have given written notice to [Concept] . . . .  This payment bond is defined by the scope of
the work that Concept was to perform in completion of the project for BW.  As previously mentioned, while the extra work
performed by AMS is beyond the terms of the initial agreement between AMS and Concept,
the evidence establishes that AMSs extra work needed to be performed for
Concept to complete the project.  Thus,
the extra work was within the general scope of the payment bond.  Also, the evidence establishes that Concept
and AMS were in direct contract with regard to the initial asbestos abatement
that Concept consistently acknowledged and accepted.  As such, by the express terms of the payment
bond, AMS was excepted from the notice requirement[6]
and, therefore, the trial courts finding that all required notice has been
satisfied is supported by the evidence. 
We overrule appellants tenth issue.

Issue 9: Express Contract

            Appellants
contend that the trial court erred in awarding AMS damages under the theory of quantum meruit
because there are express contracts between AMS and Concept that generally
cover AMSs provision of asbestos abatement services for the BW project.  AMS responds that the express contracts did
not cover the extra work requested by Concept and performed by AMS and,
therefore, recovery under the theory of quantum
meruit is permitted.

            The
right to recover in quantum meruit is based upon a promise implied by law to pay
for beneficial services rendered and knowingly accepted.  Davidson v. Clearman, 391 S.W.2d 48, 50 (Tex. 1965).  However, when a valid express contract covers
the services or materials upon which recovery is sought, recovery in quantum meruit
will not be permitted.  Truly, 744 S.W.2d at 936.  But, the existence of an express contract does
not preclude recovery in quantum meruit for the reasonable value of services rendered
and accepted which are not covered by the contract.  Black Lake Pipe Line Co. v. Union Constr.
Co., 538 S.W.2d 80, 86 (Tex. 1976), overruled on other grounds by Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).

            The
trial courts findings of fact make it clear that the extra work exceeded the
scope of the work covered by the express contracts.  Specifically, the trial court found that the
work covered by the express contracts could be performed with the use of
glove bags that do not involve area containment and donning of hazmat
suits.  However, the extra work that was
requested by Scheuerer included removal of carpet,
which did require these extra precautions. 
Appellants argument simply states that the express contracts covered
asbestos abatement to be conducted by Appellee and that, because the express
contracts covered asbestos abatement, AMS is precluded from recovery in quantum meruit based
on the provision of any asbestos abatement services.  Appellants argument, however, wholly fails
to address the trial courts finding that the scope of the asbestos abatement
covered by the express contracts was exceeded by the extra work as evidenced by
the necessity that AMS take the specified extra precautions.  Finding that there is significant evidence in
the record to support the trial courts finding that the extra work exceeded
the scope of the express contracts, we are bound by the trial courts factual
finding.  See McGalliard v. Kuhlmann,
722 S.W.2d 694, 696 (Tex. 1986) (when a finding of fact is unchallenged, it is
binding on an appellate court unless the contrary is established as a matter of
law or there is no evidence to support the finding).  Consequently, we overrule appellants ninth
issue.

 

 

Issues 11 & 15: Timeliness of
Judgment

            Appellants
contend that the trial court failed to comply with the requirements of Texas
Government Code section 74.059(c)(2),[7]
when it failed to enter judgment in this case for more than two and a half
years after the date of trial.  In their
analysis of the alleged harm caused by this delay, appellants cite Coiners
conviction for improper disposal of asbestos.[8]  AMS responds contending that appellants failed
to complain of the delay in the trial court, and case law requires a showing of
how the delay caused harm before a delay is reversible.  AMS contends that appellants fail to show how
Coiners conviction caused appellants harm or would necessitate that they be
afforded a new trial.

            Our
review of the record does not indicate that appellants ever sought to obtain
the trial courts ruling in this case nor did appellants bring to the trial
courts attention its failure to comply with Texas Government Code section
74.059(c)(2) at any time before the trial court rendered its judgment.  Following the trial courts judgment,
appellants did identify this issue in their timely filed motion for new trial.  Thus, the issue was preserved.  See Tex.
R. App. P. 33.1(b).  

            A
trial courts failure to comply with section 74.059(c)(2)
is not automatically reversible error.  See
Smith v. Montemayor, No. 03-02-00466-CV, 2003 Tex.App. LEXIS 5099, at *31-*32 (Tex.App.Austin June 19, 2003, no pet.) (mem. op.).  The complaining party bears the burden of
demonstrating that the trial courts delay in rendering judgment probably
caused the rendition of an improper judgment. 
Id. at *32.  

To meet this burden, appellants
contend that they were harmed by the passage of the three-year period after
AMSs forfeiture of its corporate charter, and by the intervening federal
indictment and conviction of Coiner for improper disposal of asbestos.  However, appellants in no way
identify the significance of the passage of three years after AMSs
forfeiture of its corporate charter nor do they identify how such an occurrence
caused them harm.  Similarly, appellants
identify that Coiner was indicted and convicted of improper disposal of
asbestos, but make no attempt to explain to this Court how this conviction
impacts the present case.  Further,
evidence provided by appellants indicates that Coiner was convicted of
negligent release of hazardous air pollutants, and that the actions upon which
this conviction is based occurred after AMS had completed its work on the BW
project.  As such, we conclude that
appellants have failed to meet their burden of demonstrating that the trial
courts delay in rendering judgment probably caused the rendition of an
improper judgment.  Likewise, we conclude
that appellants have failed to establish that Coiners conviction entitles
appellants to a new trial.  We overrule
appellants eleventh and fifteenth issues.

 

 

Issue 12: Waiver and Estoppel

Appellants contend that the evidence
established their affirmative defenses of waiver or estoppel
as a matter of law.  Appellants
contention is premised on AMSs acceptance of payment for the work covered by
the agreements, while Concept refused to pay for the extra work reflected in
the invoices after August of 2004. 
Appellants contend that AMSs silence from August of 2004, when Concept
stopped paying for the extra work, until August of 2005, when AMS filed the
present suit, constitutes a waiver of AMSs right to recover on the extra
work.  Alternatively, appellants contend
that AMSs failure to provide requested documentation to support the extra work
performed prior to trial estops AMS from recovering
on the extra work.  AMS responds that
Concepts request for backup documentation on the extra work was disputed and
that, in any event, its failure to provide documentation to support its claim
for payment does not constitute an intentional relinquishment of a known
right.

Our review of the record reveals that
AMS continued to perform extra work for Concept after Concept stopped paying
for the extra work, but that the period of time during which AMS performed
extra work while not being paid was from September of 2004 to April of
2005.  This is only a period of eight
months.  Further, evidence was presented
that Concept had paid for the extra work on the first four invoices.  AMS presented evidence that it continued to
perform the extra work beyond this point in good faith and because it thought
that Concept may have been attempting to get change orders approved by BW which
was delaying payment for the extra work. 
However, once Coiner determined that Concept was not going to pay AMS
for the extra work, AMS stopped performing the extra
work.  Thus, AMS did not take a course of
action inconsistent with claiming a right to payment for extra work for such an
extended period that it can be fairly said that AMS waived its right to
payment.  See Sun Exploration
& Prod. Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987) (waiver requires
the intentional relinquishment of a known right or engaging in intentional
conduct inconsistent with claiming that right).

As to the claim of estoppel, appellants fail to cite to any authority that
would support their contention that a failure to substantiate a claim for
payment estops a person from seeking judicial
recourse for the claim.  While it was
clearly incumbent upon AMS to establish the value of the services it provided
to Concept in order to recover on its quantum
meruit claim, nothing in the law requires that a
plaintiff must establish that value before filing suit and substantiate that
value in a manner acceptable to the benefitted party or else be estopped from asserting a quantum meruit claim.

Finding no evidence to support
appellants affirmative defenses of waiver or estoppel,
we overrule appellants twelfth issue.

Issues 13 & 14: Concepts Breach
of Contract Counterclaim

            Appellants
contend that they established their counterclaim for breach of contract as a
matter of law and that, as a result, they are entitled to at least $20,080 in
actual damages as well as $25,000 in attorneys fees.  AMS responds that it was Concept that
breached the contract and, therefore, the trial court did not err in denying
appellants counterclaim.  Further, AMS
contends that the $5,000 in attorneys fees attributable to the removal of
AMSs mechanics lien is being raised for the first time on appeal and is,
therefore, waived.

            Appellants
premise their contention that they are entitled to recover for their breach of
contract counterclaim on their decision to retain a third-party asbestos
abatement company to complete the contract work on the project that was not
completed by AMS.  However, their
argument fails to address the uncontroverted evidence that AMS remained ready
to complete the work identified in the agreements upon being recalled by
Concept.  However, apparently because AMS
ceased performing the extra work for which it was not being paid, Concept did
not recall AMS to complete the work, but rather chose to retain a third-party
to complete the work on the project.  As
such, the evidence establishes that it was Concept, not AMS,
that breached the contracts. 
Thus, we conclude that the trial court did not err in denying
appellants counterclaim.

            Having
determined that appellants are not entitled to recover on their breach of
contract counterclaim, their attorneys fees issue is reduced to appellants
contention that AMS stipulated that Concept was entitled to $5,000 in
attorneys fees relating to the removal of a mechanics lien.  While the record does reflect that AMS
acknowledged an agreement that $5,000 in attorneys fees for appellants would
be attributable to removal of the lien, this acknowledgement was part of a
pre-trial stipulation that the parties had agreed that $25,000 was a reasonable
and necessary attorneys fee through trial for each sides attorney, and agreed
that of that sum, with respect to Defendants, $5,000 of that
would be reasonably attributable to the Motion to Remove Mechanics Lien . . .
.  (emphasis
added).  Looking at the precise language
used by AMS, we construe the agreement to simply indicate that the parties
agreed as to what would constitute a reasonable and necessary attorney fee
award, and that this agreement, as it relates to appellants, has factored in $5,000
for the removal of the lien.  Thus,
nothing in the agreement obligated the trial court to make a separate award of
attorneys fees to appellants relating to the removal of the lien.  

Further, appellants cite Texas
Property Code section 53.156 as statutory support for their entitlement to
these attorneys fees.  However, section
53.156 permits the trial court to award costs and reasonable attorneys fees as
would be equitable and just.  Tex. Prop. Code Ann. § 53.156 (West 2007).  Appellants have wholly failed to show that
the trial court abused its discretion by not awarding them $5,000 as attorneys
fees relating to removal of the mechanics lien.

Finally, appellants failed to address
the trial courts award of attorneys fees in either their motion for new trial
or in their motion for reconsideration of motion for new trial.  Thus, we conclude that appellants failed to
bring their construction of the pre-trial stipulation regarding attorneys fees
to the trial courts attention and, therefore, have waived any objection to the
trial courts award.  See Tex. R. App. P. 33.1.

            We
overrule appellants thirteenth and fourteenth issues.

 

 

 

Conclusion

            Having
overruled each of appellants fifteen issues, we affirm the judgment of the
trial court.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice








 











[1] According to the
testimony of Glen Ashton, a third-party air maintenance consultant employed for
this project, the additional work requested by Scheuerer
more than doubled the scope of the work that was covered by the first two
contracts, and altered the manner of performing the work by requiring area
containment and the donning of hazmat suits.

 





[2] In fact, this
distinction between the failure to disclose evidence
in response to a discovery request as opposed to the failure to disclose
properly pled theories of recovery is precisely why the trial courts ruling
excluding the testimony of appellants untimely disclosed expert was
proper.  The withholding of evidence
that is necessary to respond to a discovery request properly results in the
exclusion of that evidence under Rule 193.6(a).





[3]
Further
reference to the Texas Rules of Evidence will be by Rule ___.





[4] Appellants issues
challenge the trial courts following findings of fact:

 

5. Concept then
requested substantial additional work, approximately equal in scope to the
original job.  This additional work
substantially increased the preparation necessary, thereby actually exceeding
the quoted scope.

 

6. Plaintiff [AMS] is
an asbestos contractor, and the services provided involve removal of asbestos contaminated
material.  The limited scope quoted could
be accomplished with the use of glove bags that do not involve area
containment and donning of hazmat suits. 
The extra work subsequently requested include removal of carpet, which
did require these additional precautions.

 

8. Plaintiffs work
benefitted Defendant Concept . . . .

 

9. Concept accepted
the extra work.

 

12. Asbestos [AMS]
dealt directly with Concept, and presented its invoices stating the basis of
its claim for compensation.  All notice
requirements for recovery under the payment bond against Defendant Capitol . .
. have occurred or been satisfied.





[5] Within their
argument of issue six, appellants allege that, Finding of Fact No. 4 includes
a reference to ALC, a flaw which is fatal to the elements of the theory of quantum meruit.  However, this allegation is not
explained.  As this Court cannot determine
the nature of appellants argument, we cannot agree that the trial courts
reference to ALC is fatal to AMSs quantum
meruit claim. 
We do, however, note that the trial courts finding of fact No. 4
appears to go with Finding of Fact Nos. 2 and 3 to identify the scope of the
work covered by the express contracts.





[6]
We acknowledge
that AMSs quantum meruit
claim is, by definition, extra-contractual. 
However, the payment bond excepts claimants
from providing notice of claims when in direct contract with Concept.  Exceptions to
coverage contained within an insurance policy are to be strictly construed
against the insurer and in favor of coverage, and any intent to
exclude coverage must be expressed in clear and unambiguous language.  National Union Fire Ins. Co. of
Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991).  In the present case, the terms of the bond
allow for a reasonable interpretation exempting AMS from the notice
requirement, and we are therefore compelled to interpret the policy in favor of
coverage.





[7] Section 74.059(c)(2) provides, (c) A district, statutory probate, or
statutory county court judge shall: (2) rule on a case within 90 days after the
case is taken under advisement.  Tex. Govt Code Ann.
§ 74.059(c)(2) (West 2005).

 





[8] Appellants issue 15
does not challenge the judgment as being untimely, but does challenge the trial
courts denial of appellants motion for new trial based on Coiners
conviction.  Since that issue contends
that appellants are entitled to a new trial on the same basis upon which they
contend that the trial courts untimely judgment caused them harm, we will
analyze the issues together.