**Jennifer K. Malone HESTER, Appellant**

v.

**FRIEDKIN COMPANIES, INC., Gulf States Toyota, Inc., Gulf States Financial Services, Inc., and Gulf States Marketing, an Assumed Name of Friedkin Companies, Inc., Appellees.**

No. 14–02–01154–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 25, 2004.

---

**102**

Eliot P. Tucker, Roy L. Barnes, William Pannill, Houston, for appellant.

Jerry K. Clements, Dallas, John L. Hill, Jr., Stacy Lee Williams, Houston, for appellees.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant Jennifer K. Malone Hester appeals from a judgment notwithstanding the verdict. Hester sued her former employer, Friedkin Adventure Companies ("Friedkin Adventure"), for breach of a contract to pay her a bonus for a business suggestion. She also sued Friedkin Companies, Inc. ("Friedkin Companies"), Gulf States Toyota, Inc. ("Gulf States Toyota"), Gulf States Financial Services, Inc. ("Gulf States Financial"), and Gulf States Marketing, an assumed name of Friedkin Companies, Inc., asserting a quantum meruit claim against them. A jury returned a verdict for Hester against all the defendants. The defendants accepted the verdict against Friedkin Adventure, but moved to set aside the verdict against the other defendants. The trial court granted the judgment notwithstanding the verdict and this appeal followed. We affirm.

## I. Factual Background

Friedkin Adventure employed Hester as a reservationist. She booked photographic safaris in Africa and Nepal. During the time period relevant to this lawsuit, Thomas Friedkin was the sole shareholder of Friedkin Adventure as well as appellee Friedkin Companies. He was a joint owner of Gulf States Toyota, along with his son, Dan Friedkin. Dan Friedkin was the sole shareholder of Gulf States Financial. Hester was not employed by any defendant except Friedkin Adventure. Hester contends that Friedkin Adventure is a separate company and not part of any other defendant.

In an August 30, 1994 memorandum distributed to "All FAC Staff"—Friedkin Adventure Staff, David Marek, a vice president of the company, wrote, *"Your suggestions to reduce costs can earn you additional cash as well.* Just submit your written suggestion, [sic] to your supervisor or to Trish, [sic] for evaluation. All employee's [sic] suggestions utilized, which result in a cost savings, will be awarded a bonus. The amount of the bonuses will vary according to the size of the savings."

Hester submitted a suggestion to Mark Brady, another Friedkin Adventure vice president, in September 1994. Her memo reads, in relevant part, as follows:

In response to your memo dated 9/2/94 and that of David Marek dated 8/30/94 I would like to submit the following suggestions for cost reductions. I believe my suggestions can be tested on a "pilot" basis at little or no cost to prove its worth and can save substantial costs for all The Friedkin Companies (TFC) as well as FAC [Friedkin Adventure Company].

. . .

SUGGESTION: Use the E-mail services of the information highway (Internet) via high speed fax/modems instead of fax machines to substantially reduce the cost of telephone charges, staff costs and related miscellaneous costs for TFC [the Friedkin Companies]. In the interim, while verifying the cost savings of the Internet, . . . have TFC [the Friedkin Companies] personnel use E–Mail daily in lieu of the fax machine.

Your memo identified international phone charges as the major culprit in our communications costs and staff costs as another major cost. This suggestion can substantially reduce both. The total savings to all TFC [the Friedkin Companies] could conceivably be in the millions of dollars over the next few years. (Sounds like a new Lexus!!)

Hester discussed her idea with Marek and Brady, and Marek reported the suggestion to Frank Gruen, Friedkin Adventure's president.[1] Thereafter, in a October 14, 1994 memo distributed to "All FAC Staff," Marek wrote, "[Hester] has submitted the idea with potentially the greatest cost savings to us. Her idea is to access the 'Internet' information highway for our overseas communications. This idea has great potential. We'll keep you informed as we work with [Hester] to see if we can make it happen." Hester subsequently engaged a consultant, and the consultant met with Hester, Brady, Marek and two other Friedkin Adventure employees to discuss the use of the internet. Gruen sent Marek to talk with Robert Asbill, an employee of Gulf States Toyota, who had been researching use of the internet by Gulf States Toyota. Marek testified at trial that Hester was the first person to suggest the use of the internet for e-mail by Friedkin Adventure or the other companies. At some point in time, Marek told Hester that Gulf States Toyota would research the use of the internet because Friedkin Adventure did not have the manpower to do it.

In November of 1996, two years after Hester made her suggestion, Friedkin Adventure began to use internet for e-mail. Prior to that, however, Friedkin Adventure sold parts of its business to Marek, who left Friedkin Adventure in March or April of 1996. In August of 1996, Hester sent a memorandum to Wes Weder, who was in charge of the suggestion program for Gulf States Toyota, asking for her bonus for the suggested use of the internet for e-mail. She wrote, "Due to all the changes affecting Freidkin Adventure Companies in the last year my incentive bonus seems to have been overlooked." Brooks O'Hara, vice president of administration for Gulf States Toyota, replied on October 17, 1996, and said

We have reviewed you [sic] suggestion and it has merit. The problem now is identifying savings and benefit. I will have Laura Taylor review to see if she can come up with some ideas. Sorry it

_____

1. Gruen also was the vice president of the Friedkin Companies and a member of its board, as well as the boards of the other defendants.

is taking so long but with most of FAC [Friedkin Adventure] split up it's hard to determine who can do what. Please hang in there!

On a handwritten note, O'Hara asked Laura Taylor, who had worked for Friedkin Adventure but then worked for Friedkin Companies, to "review this idea," and said, "It slipped through the cracks at FAC and [Hester] was never responded to." Hester subsequently was asked by Jacquie Dye, an employee of Friedkin Adventure, to come up with an idea of cost savings. In November of 1996, Hester estimated annual net cost savings for all the Friedkin Companies around $25.6 million. She suggested a bonus of $10,000 and a 1997 Toyota Avalon. In response, in 1997, Hester was asked to estimate cost savings for Friedkin Adventure only. In March of 1997, Hester prepared a spreadsheet analyzing net cost savings for only Friedkin Adventure (approximately $661,000), and she asked for a cash bonus of $30,000. In that document, she complained about excluding the other Friedkin entities: "Excluding the numbers for GST & the other Friedkin companies makes little sense because the suggestion is so successful, it should be strongly recommended that all companies use the idea."

Subsequently, in a memo on Friedkin Adventure letterhead to O'Hara, Dye wrote, "The Houston office has seen considerable savings in many areas.... She [Hester] indicated to me that [M]ark Brady & David Marek said on numerous occasions that they had turned the project over to [Gulf States Toyota] because everyone needed to benefit from it." Dye also wrote, "The suggestion has incredible potential for all the companies. We know for a fact that staff at Wilshire [offices of Gulf States Toyota and Friedkin Companies] use the Internet because they are requesting the addresses to our remote offices. Wilshire even has their own Domain address and a web page on the Internet for Toyota and Lexus."

Ultimately, O'Hara sent Hester a memo saying, "In fact, analysis confirm [sic] that the net impact of implementing the suggestion did not produce net savings of any significance for Friedkin Adventure." Hester received $500.00 for her suggestion. Hester ended her employment with Friedkin Adventure and brought suit against Friedkin Adventure and appellees. Hester pleaded both a claim for breach of an express contract and a claim for quantum meruit. She did not allege an alter ego theory and there was no finding of alter ego.

The jury found liability under both the breach of contract and quantum meruit questions. For breach of contract, the jury awarded $25,000.00 against Friedkin Adventure. The trial court rendered judgment on the jury's breach of contract answers and awarded Hester against Friedkin Adventure actual damages of $25,000, plus prejudgment interest of $9,602.74 and postjudgment interest. The trial court rendered a judgment notwithstanding the verdict on the jury's quantum meruit answers. No party appeals the amount of the damages awarded to Hester for her breach of contract claim against Friedkin Adventure, and Friedkin Adventure is not a party to this appeal.

## II. Issues Presented

Hester presents the following six issues for our review: (1) whether the defendants waived their complaint that the contract between Hester and Friedkin Adventure precludes quantum meruit recovery against the remaining defendants by failing to secure a jury finding to that effect; (2) whether the contract at issue included the defendants other than Friedkin Adventure; (3) whether an action for quantum

meruit, which requires restitution of the amount of the benefit received, allows the plaintiff to recover damages based on the value of the plaintiff's services to the defendants; (4) whether the trial court properly disregarded the testimony of Hester's proffered expert witness regarding the cost savings allegedly obtained by the defendants based on implementation of Hester's suggestion; (5) whether the fact that Hester's suggestion was communicated by her immediate bosses to the president of Friedkin Adventure, also an officer or director of the remaining defendants, and to at least one employee of Gulf States Toyota, who handled computer technology for all the defendants, proves that she is entitled to recover in quantum meruit against the defendants other than Friedkin Adventure; and (6) whether the trial court erred in overruling the plaintiff's motion for judgment on the jury verdict and in granting the defendants' motion for judgment notwithstanding the verdict.

### III. Standard of Review

■ The standard of review for a judgment notwithstanding the verdict is the same as a directed verdict. *Rush v. Barrios*, 56 S.W.3d 88, 94 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990)). We will affirm a judgment notwithstanding the verdict only if there is no evidence to support an issue, or conversely, if the evidence establishes an issue as a matter of law. *Id.* (citation omitted). No evidence exists, and a judgment notwithstanding the verdict should be entered, when the record discloses one of the following: (1) a complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes

conclusively the opposite of a vital fact. *Id.* (citation omitted). "To determine whether there is any evidence, we must review the record in the light most favorable to the verdict, considering only the evidence and inferences that support the verdict and rejecting the evidence and inferences contrary to the verdict." *Id.* (citation omitted). If there is more than a scintilla of evidence to support the jury's findings, the judgment notwithstanding the verdict should be reversed. *Id.* (citations omitted).

### IV. Analysis

■ Appellees assert that this entire appeal can be resolved by answering the question of whether a plaintiff can recover for the same alleged services under an express contract and in quantum meruit. We agree and therefore address Hester's first, second, third, and fifth issues in our discussion of this one question.

■ Hester argues that she is not precluded by her contract with Friedkin Adventure from recovering in quantum meruit against the other Friedkin companies for their alleged use of the internet as a result of her suggestion. Hester, however, ignores well-established Texas precedent holding to the contrary. "Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received." *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.*, 42 S.W.3d 149, 159 (Tex.App.-Amarillo, no writ) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992)). A plaintiff must establish the following to recover under the doctrine of quantum meruit: (1) valuable services or materials were furnished, (2) for the person or entity sought to be charged, (3) which were accepted, used, and enjoyed by the person or entity sought

to be charged, and (4) under such circumstances as reasonably notified the person or entity sought to be charged that the plaintiff, in performing services or furnishing properties, expected to be paid by the person or entity to be charged. *Id.* at 160 (citing *Heldenfels,* 832 S.W.2d at 41); *see also Jones v. Cooper Indus., Inc.,* 938 S.W.2d 118, 126 (Tex.App.-Houston [14th Dist.] 1996, writ denied). This court has emphasized that "[t]o recover in quantum meruit, the plaintiff must show that his efforts were undertaken *for* the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Economy Forms Corp. v. Williams Bros. Constr. Co., Inc.,* 754 S.W.2d 451, 459 (Tex.App.-Houston [14th Dist.] 1988, no writ) (citing *Truly v. Austin,* 744 S.W.2d 934, 937 (Tex.1988)). In this case, Hester did not send her memo to any of the appellees, and none of the appellees requested that she submit a cost savings suggestion to them. The suggestion was solicited by Friedkin Adventure, her employer, and she submitted it only to Friedkin Adventure. None of the appellees promised her a bonus for the suggestion she submitted to Friedkin Adventure. Nor did she inform any of those companies that she expected a bonus paid by them, in addition to any bonus she received from Friedkin Adventure. For these reasons, it does not matter that Hester said in her memo that the suggestion could be used by appellees. Nor does the fact that appellees had overlapping officers with Friedkin Adventure alter this conclusion, as discussed in more detail below.

■ Furthermore, a party may recover under quantum meruit only if there is no express contract covering the services or materials furnished. *Iron Mountain Bison Ranch,* 42 S.W.3d at 160 (citing *Murray v. Crest Constr., Inc.,* 900 S.W.2d 342, 345 (Tex.1995)). A plaintiff seeking to recover the reasonable value of services rendered or materials supplied will be precluded from recovering in quantum meruit if there is an express contract covering those services or materials and if no exception to the principle applies. *Id.* (citations omitted). There are some exceptions to this rule, none of which are applicable to this case. *See, e.g., W & W Oil Co. v. Capps,* 784 S.W.2d 536, 537–38 (Tex.App.-Tyler 1990, no writ) (noting that exceptions include if the contract is invalid, abandoned, or partially performed without the fault of the party seeking to recover in quantum meruit) (citations omitted). "The rule is applicable not only when the plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, *but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who benefitted from its performance.*" *Iron Mountain Bison Ranch,* 42 S.W.3d at 160 (citing *W & W Oil Co.,* 784 S.W.2d at 537–38) (emphasis added).

We have applied the latter rule to preclude recovery on a quantum meruit claim against a party foreign to the plaintiff's contract. *Jones,* 938 S.W.2d at 126 (holding that patent assignor could not recover royalties allegedly due under patent rights agreement under doctrine of quantum meruit from party who acquired patent rights from assignee, on grounds that assignor provided that party with services or materials under agreement, where there was express contract which covered patents and services to be provided, and assignor failed to show that he actually provided any services after patents were subsequently assigned). Our sister courts also have applied this rule to preclude recovery under quantum meruit. *See, e.g., Jupiter Enterps., Inc. v. Harrison,* No. 05–00–01914–CV, 2002 WL 318305, at *4 (Tex. App.-Dallas March 1, 2002, no pet.) (not designated for publication) (stating that

general contractor could not recover under doctrine of quantum meruit against assignee of real property, even though contractor's contract was with assignor, because assignee benefitted from contractor's performance, and "unjust enrichment rules are applicable not only when the plaintiff is seeking to recover for unjust enrichment from the party with whom he contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who benefitted from its performance") (citations omitted); *Morales v. Dalworth Oil Co., Inc.*, 698 S.W.2d 772, 775 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e.) (holding that installer of gasoline tanks and gasoline could not recover against landowner for quantum meruit recovery when installer's contract was with lessees of property, and subject matter of implied contract was covered by the valid express contract between installer and lessees). Accordingly, we overrule Hester's third issue.

■ Hester's argument that appellees waived this defense by not seeking a jury finding also is without merit. The case relied upon by Hester in making this argument, *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex.2000), does not support her contention. There, the court held that because there was no evidence reflecting the terms of Conoco's arrangement with two of the plaintiffs who did not have enforceable contracts with Conoco, the court could not tell the terms of the parties' agreements. In that context, the court held "[w]hen the existence of or the terms of a contract are in doubt, and there is a claim for unjust enrichment, it is incumbent on the party disputing that claim to secure findings from the trial court that an express contract exists that covers the subject matter of the dispute." That holding does not apply in this case, where the terms of Hester's contract with Friedkin

Adventure are not in doubt. The only question is whether she can recover against parties foreign to the contract, and as we have held, the answer to that question is no. Accordingly, we overrule Hester's first issue.

■ We thus turn to Hester's second and fifth issues. Hester does not contend that she had a contract with appellees. Her memo was addressed only to Friedkin Adventure. Thus, we overrule Hester's second issue to the extent she claims that her contract expressly included appellees. In her fifth issue, Hester argues, because there were overlapping officers and directors of, as well as common ownership interests in, Friedkin Adventure and appellees, she has a quantum meruit claim against appellees. This argument, however, is contrary to her admission that Friedkin Adventure is a separate company from appellees. It is also not supported by any pleading by Hester; Hester did not plead alter ego. Furthermore, the existence of overlapping officers and directors or common ownership does not support a quantum meruit claim against a nonparty to a contract when the subject matter of the claim is the subject of a valid written contract. *See Bado Equip. Co., Inc. v. Bethlehem Steel Corp.*, 814 S.W.2d 464, 473 (Tex.App.-Houston [14th Dist.] 1991, no writ) (holding that summary judgment was proper on unjust enrichment claim brought by seller of cranes against purchaser, constructor of rig, corporation that subsequently purchased rig, and second corporation which, along with constructor, was joint owner of corporation that purchased rig because there was an express contract covering goods and because there was no evidence indicating that any of the defendants were made aware that the seller expected to be paid by any of them other than the purchaser of the rigs).

**108**

In this case, Hester presented no evidence that Friedkin Companies, Gulf States Toyota, Gulf States Financial or Gulf States Marketing were aware in 1994 that Hester expected to be paid by them for her suggestion that Friedkin Adventure use the internet for e-mail. Hester has presented no evidence that her efforts in preparing her 1994 memo suggesting use of the internet were undertaken for Friedkin Companies or any other appellee. To the contrary, her evidence conclusively establishes she submitted her suggestion to her supervisors at Friedkin Adventure, her employer, and she knew that none of the appellees had requested that she submit a cost savings suggestion for any of them. There is also no evidence that any of appellees used Hester's suggestion. As we have said, "it is not enough to merely show that [her] efforts benefitted the [appellees]." In any event, in this case, there is no evidence that any of appellees benefitted from Hester's suggestion that Friedkin Adventure or any of the Friedkin companies should use the internet for e-mail. Accordingly, we overrule Hester's fifth issue.

Because of our disposition of Hester's first, second, third, and fifth issues, we need not address her fourth issue regarding damages. Further, having overruled Hester's first, second, third, and fifth issues, we conclude the trial court properly denied Hester's motion for judgment on the verdict and properly granted appellees' motion for judgment notwithstanding the verdict. Accordingly, we overrule Hester's sixth issue.

The judgment of the trial court is affirmed.