Appellant=s Motion for Rehearing Granted








 

Appellant=s Motion for Rehearing Granted.  Appellees= Motion for Rehearing Overruled.  Opinion of August
24, 2006 Withdrawn.  Affirmed as Modified in Part, Remanded in Part and Substitute Opinion filed
December 7, 2006.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00010-CV

____________

 

APACHE CORPORATION, Appellant

 

V.

 

DYNEGY MIDSTREAM SERVICES, LIMITED
PARTNERSHIP AND VERSADO GAS PROCESSORS, LLC, Appellees

 



 

On Appeal from the 234th
District Court

Harris County, Texas

Trial Court Cause No. 02-25821

 



 

S U B S T I T U T E   O P I N I O N   O N   R E H E A R
I N G

This is a commercial damages case involving natural gas
contracts.








This appeal arises from disagreements as to the
interpretation of several gas contracts between the predecessors of Apache
Corporation and Versado Gas Processors.  The disputes were submitted to a jury,
and Apache received favorable answers to the most critical questions addressed
by the jury.  However, the trial court granted a judgment notwithstanding the
verdict.  In six issues, Apache contends the trial court erred in rendering
judgment because legally sufficient evidence supported its breach of contract
and unfair trade practice claims.  Dynegy and Versado (collectively AVersado@) filed a
cross-appeal in which they complain the trial court erred in awarding Apache a
declaratory judgment for future field condensate payments.  In both appeals,
the parties argue they are entitled to recover attorney=s fees as the
prevailing party.  We modify the judgment, affirm as modified, and remand the
issue of Versado=s attorney=s fees.

I.  Procedural and Factual Background

Apache is a producer of natural gas and owns several oil
and gas wells in West Texas and New Mexico.  Title to the gas Apache produces
is transferred to Versado at the wellhead.  Versado then transports the gas
through its pipeline to a processing plant.  At the plant, the liquid
hydrocarbons are stripped out of the gas and are sold as fuel.  The remaining
dry residue gas is also sold by Versado.  Although Versado is the party who
contracted with Apache to process the gas, it has no employees; therefore,
Dynegy employees operate the gas processing plants.  Versado agreed to pay
Apache a percentage of the proceeds it realizes from the sale of the liquid
hydrocarbons and the residue gas.  The dispute between the parties arose after
Apache audited Versado=s payments and discovered irregularities
in the payments for gas and liquids to Apache.

Versado owns several processing plants at issue in this
case.  The Eunice North and South Plants were originally built by Texaco in
1936.  The Eunice Middle Plant was built in 1948 by Gulf Oil, and the Monument
Plant was built in 1936 by Amerada Hess, which was later purchased by Warren
Petroleum.  Those companies are the original parties to the contracts at
issue.  Through a series of mergers and acquisitions, Apache and Versado are
the current parties to the contracts.  








Apache sued Versado for breach of contract and for
violations of the New Mexico Unfair Practices Act.  The jury found that Versado
breached the contracts and engaged in unfair or deceptive trade practices.  The
jury further found that Apache neither wrongfully retained money from Versado,
nor failed to comply with the contracts.  Finally, the jury found that Versado
charged Apache excessive marketing fees.  For the breach of contract and unfair
practices violations, the jury awarded $1,508,674 in damages to Apache.  For
the claim of excessive marketing fees, the jury awarded $158,000 in damages.

Following the jury=s verdict, Versado
filed a motion for judgment notwithstanding the verdict, which the trial court
granted in part.  In its judgment, the trial court ordered that Apache take
nothing on its contract and unfair practices claims and that Versado take
nothing on its counterclaims.  The trial court further entered a declaratory
judgment on eleven of the contracts declaring that Apache was entitled to
payments for condensate from the North and South Eunice locations from the date
of Versado=s last condensate payment to Apache through the date
the contracts terminate.  The trial court awarded Apache $75,000 in attorney=s fees for its
declaratory judgment action, and affirmed a partial summary judgment in which
it found Versado had not breached the contracts regarding interaffiliate
transfers.  Both parties appealed.  

In six issues, Apache contends the trial court erred in
entering judgment notwithstanding the verdict because the evidence supports
both the trial court=s finding that the contracts were
ambiguous and the jury=s verdict interpreting the contracts. 
Apache further seeks attorney=s fees of $775,000 through trial and
$100,000 through appeal.  In a cross-appeal, Versado contends the trial court
erred in entering a declaratory judgment awarding Apache future condensate
payments because neither the evidence, nor the jury=s verdict,
supports the declaratory judgment.  Versado also seeks remand to determine the
amount of attorney=s fees it should recover.

 

 








II.  Standard of Review for Judgment Notwithstanding the Verdict

In order to uphold a trial court=s judgment
notwithstanding the verdict, an appellate court must determine that no evidence
supports the jury=s findings.  Mancorp v. Culpepper,
802 S.W.2d 226, 227 (Tex. 1990).  The final test for legal sufficiency must
always be whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review.  City of Keller v. Wilson, 168
S.W.3d, 802, 827 (Tex. 2005).  Under the properly applied scope of review,
appellate courts must view the evidence in the light most  favorable to the
verdict, crediting favorable evidence if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not disregard
such evidence. Id. at 807.

A judgment notwithstanding the verdict is proper in the
following circumstances: (1) a defect in the opponent=s pleadings makes
the pleadings insufficient to support a judgment, (2) the evidence conclusively
proves a fact that establishes a party=s right to
judgment as a matter of law, or (3) the evidence offered on a cause of action
is insufficient to raise an issue of fact. Sherman v. Elkowitz, 130
S.W.3d 316, 319 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  If
there is sufficient evidence to support the jury=s findings, the
judgment notwithstanding the verdict should be reversed.  Hester v.
Friedkin Companies, Inc., 132 S.W.3d 100, 104 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied).

III.  Breach of Contract C Unaccounted-for Gas

The plants now owned by Versado process natural gas
supplied by Apache.  When the gas enters Versado=s  pipeline, it is
under relatively low pressure.  As the gas moves through the pipeline, the
pressure is gradually increased so the gas can reach the plant.  At the plant,
the gas is compressed further to extract liquids.  During this process, the
quantity of gas received by Versado from Apache is reduced by the amounts of
gas used for fuel, lost through leaks, and flared during processing. 








The dispute between Apache and Versado arose after Apache
conducted a routine audit and discovered that Versado included a category for Aunaccounted-for
gas@ in its
calculations of residue gas.  Eight of the contracts define residue gas as Athe quantity of
Gas which remains after the Liquid Hydrocarbon Products are extracted . . .
after the allocated volumes of Plant fuel, field and Plant compressor fuel,
Plant and field losses, and flare are deducted.@  In five of the
contracts, the payment provision states that ASeller hereby
conveys to Buyer free of cost to Buyer, title to the Gas consumed as fuel in
the operation of the Plant and Gathering System, and all Gas which is flared,
leaked or otherwise lost in the operation of the Plant and Gathering System[.]@ The remaining
five contracts define residue gas as Aany Gas which is
discharged in the form of Gas from the Plant before or after processing or sold
as fuel from Buyer=s Gathering System.@  As payment for
any residue gas, Apache receives a percentage of the Anet proceeds
f.o.b. the Plant tailgate.@  

Apache sued Versado on the grounds that while the contracts
permit Versado to deduct lost gas, fuel gas, and flared gas for the purpose of
determining the quantity of residue gas, the contracts do not permit a
deduction for unaccounted-for gas.[1] 
At trial, Versado argued the unaccounted-for gas was actually lost gas and the
percentages of unaccounted-for gas were high because Versado=s pipeline was
aging and it was impossible to efficiently check leaks and measure all gas lost
from those leaks.  Versado also offered evidence that the measurement at the
wellhead was not consistently accurate, and they were often required to flare
more gas than usual because they were repairing leaks in the pipeline.  The
jury determined that Versado breached the contracts by failing to pay Apache
$1,508,674 for unaccounted-for gas.  The jury further found that by failing to
pay for unaccounted-for gas, Versado engaged in unfair practices under the laws
of New Mexico.  Versado moved for judgment notwithstanding the verdict.  The
trial court agreed with Versado and disregarded the jury=s verdict that
Versado  breached the contracts with Apache by failing to pay Apache for
unaccounted-for gas and engaged in unfair practices. 








A.
Legal Sufficiency of the Evidence to Support the Answer to Jury Question No. 1. 

In its second issue, Apache argues that because Apache
presented legally sufficient evidence that Versado failed to comply with the
contracts by failing to pay for unaccounted‑for gas, the judgment
notwithstanding the verdict should be reversed.  The essential elements of a breach of contract claim
are: (1) the existence of a valid contract; (2) the plaintiff performed or
tendered performance; (3) the defendant breached the contract; and (4) the
plaintiff was damaged as a result of the breach. Aguiar v. Segal, 167
S.W.3d 443, 449 (Tex. App.CHouston [14th Dist.] 2005, pet. denied).  Although Apache
claims the contracts are ambiguous, we find as a matter of law they are not
ambiguous.  If a contract can be given a certain or definite legal meaning or
interpretation, then it is not ambiguous.  Nat=l Union Fire Ins.
Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).  In determining the
issue of ambiguity, our primary concern is to ascertain and give effect to the
intentions of the parties as expressed in the instrument.  GTE Mobilnet of
S. Tex. Ltd. Partnership v. Telecell Cellular, Inc., 955 S.W.2d 286, 289
(Tex. App.CHouston [1st Dist.] 1997, writ denied).  The rule in
Texas is that an ambiguity does not exist simply because the parties advance
conflicting interpretations of the contract. Forbau v. Aetna Life Ins. Co.,
876 S.W.2d 132, 134 (Tex. 1994).  The plain language of the contracts provides
that Apache is paid for residue gas as a percentage of the Anet proceeds
f.o.b. the Plant tailgate.@  None of the contracts at issue permits
Versado to deduct unaccounted-for gas for purposes of calculating residue gas. 
Because the gas contracts are unambiguous as a matter of law, jury question one
was properly limited to the fact question of the legitimacy of Versado=s deduction for
unaccounted-for gas. 








Jury Question No. 1 asked, ADid Versado fail
to comply with each of the Contracts by failing to pay Apache for
unaccounted-for gas?@  The jury answered, Ayes.@  Question No. 3
asked the jury AWhat sum of money, if any, if paid now in
cash, would fairly and reasonably compensate Apache for its damages, if any,
that resulted from Versado=s failure to comply with the Contracts?@  The jury answered,
A$1,508,674.00.@  By granting the
motion for judgment notwithstanding the verdict, the trial court found no
evidence to support those findings.  Therefore, if  some evidence supports the
jury=s answers to those
questions, we must reverse the trial court=s judgment.  See
Hester, 132 S.W.3d at 104.  

Viewed in the light most favorable to the verdict, the
evidence shows Versado paid Apache for a percentage of the residue gas minus
gas used as fuel, flared, lost, and unaccounted-for.  Versado presented
evidence that it did not breach the contracts because the unaccounted-for gas
simply fell into one of the other three categories of deductions, but was
incapable of measurement.  Apache presented conflicting evidence that the
amounts of unaccounted-for gas listed in Versado=s records could
not reasonably be considered as lost, fuel, and flared.  Versado points out
that five of the contracts do not include the Alost, fuel, and
flared@ language when
referencing residue gas.  Versado argues that those contracts should be
segregated from the remaining contracts and should be treated differently. 
This contention is contrary to the evidence at trial.  The evidence showed that
the standard practice in the industry is that the processor routinely pays the
producer-seller the seller=s percentage of gas delivered at the
wellhead, minus deductions for gas used as fuel, flare, and lost gas.  John
Bower, an expert who testified for Apache, testified that the contracts comported
with this industry standard.  Denton Kernodle, Apache=s audit manager,
testified that while five of the older contracts did not reference deductions
to be taken from residue gas, nothing in those contracts permitted Versado to
deduct unaccounted-for gas from its percentage payments.  Versado did not
contradict Kernodle=s testimony on those contracts.  Further,
Apache, in presenting evidence of its damages, referred to Versado=s settlement
statements and material balance statements, which deducted fueled, flared,
lost, and unaccounted-for gas without reference to which contract it applied
the deductions.








By deducting unaccounted-for gas, an action not permitted
by the contracts, from the percentage of payment owed to Apache, Versado
breached the unambiguous terms of the contracts.  Apache presented further
evidence that Versado failed to pay Apache $1,508,674 for residue gas Versado
categorized as unaccounted-for.  After reviewing the evidence in the light most
favorable to the jury=s findings, we find there is legally
sufficient evidence to support the jury finding that Versado breached the
contracts, and that Apache suffered damages for the breach.  Because legally
sufficient evidence supports the jury=s findings, the
trial court erred in disregarding its verdict.  Apache=s second issue is
sustained.

B. 
Amicus Curiae Arguments

The
Texas Pipeline Association filed an amicus curiae brief in which it alleges that its members
have contracts similar to those at issue in this proceeding and that the contracts
could be affected by the outcome of this case.  The Association contends it is Aconcerned with the premise that a
party can acquire a producer=s interest in a gas purchase contract executed many years
prior to the acquisition, and attempt to cause a retroactive interpretation of
that contract based on the allegation that the contract does not comport with
the parties= intent.@  In
this opinion, we do not
attempt to Aretroactively interpret@ the contract at all.  This is a simple breach of contract
case.  The contract requires Versado to pay a percentage of the proceeds of all
gas that is not lost, flared, or leaked.  Because Versado impermissibly
deducted additional volume for unaccounted-for gas, it breached the contract,
and must pay damages for the breach. If the TPA members comply with the terms
of their contracts, this opinion will not affect interpretation of the Pipeline
Association=s members= contracts.

C. 
New Mexico UnFair Practices Act

Because we have sustained Apache=s second issue, we
need not address Apache=s first issue challenging the judgment on
the New Mexico Unfair Practices Act, or its fifth issue concerning Versado=s failure to
comply in good faith. 

IV.  Marketing Fees








In its third issue, Apache contends the trial court erred
in rendering judgment notwithstanding the verdict because legally sufficient
evidence supports the jury=s verdict in favor of Apache=s claim for breach
of contract regarding an excessive marketing fee.  The jury found that Versado
failed to comply with eleven of the contracts by charging Apache excessive
marketing fees of $158,000.  Apache based its claim for excessive marketing
fees on the portion of the contracts that address payment for liquid
hydrocarbons.  Apache contends Versado sold liquid hydrocarbons to its
affiliates at an artificially depressed price because it deducted a marketing
fee from the weighted average sales price.  The contracts permit Versado to
deduct costs from the sales price of liquid hydrocarbons.  Because Versado sold
the liquid hydrocarbons to its affiliates, Apache argues Versado incurred no
marketing fee, so it should not have been permitted to deduct a fee from the
sales price.

Question No. 17 in the court=s charge, asked, ADid Versado fail
to comply with the Contracts by charging Apache excessive marketing fees?@  The jury
answered, Ayes.@  We review the sufficiency of the
evidence in light of the charge submitted.  Bradford v. Vento, 48 S.W.3d
749, 754 (Tex. 2001).  There is no evidence in the record that Versado charged
Apache a marketing fee.  Apache=s audit manager, Denton Kernodle,
testified that Apache was not charged a marketing fee.  He testified that
Apache=s complaint was
that Versado paid a marketing fee to its affiliates.  He admitted Apache is not
a party to the contracts in which the fee is charged.  Because the evidence
does not support the jury=s answer to Question No. 17, judgment
notwithstanding the verdict is proper.  Appellant=s third issue is
overruled.

V.  Interaffiliate Sales

In its fourth issue, Apache contends the trial court erred
in granting partial summary judgment based on Apache=s claim for breach
of contract regarding interaffiliate sales.  In its pleadings Apache claimed
Versado engaged in sham transactions in which it sold residue gas at below
market prices to its affiliates who, in turn, resold the gas for a higher
price.  Versado filed a motion for summary judgment claiming neither the
contracts, nor the law, require it to sell Apache=s products to
unaffiliated third parties.  The trial court granted partial summary judgment
on Apache=s claims that relate to interaffiliate sales of
natural gas and natural gas liquids.  








The movant for summary judgment has the burden to show
there is no genuine issue of material fact and it is entitled to judgment as a
matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985).  When deciding whether there is a disputed material fact issue
precluding summary judgment, the appellate court must take as true all evidence
favorable to the non‑movant.  Id. at 548B49.  The reviewing
court must indulge every reasonable inference in favor of the non‑movant
and resolve any doubts in its favor.  Id. at 549.

The dispute over interaffiliate sales arises from the
contracts that require Versado to pay Apache a percentage of the actual price
it receives.  Apache alleges Versado breached the contracts by selling gas to
its affiliates and not obtaining the best possible price.  In its motion for
summary judgment, Versado alleged the contracts do not require it to sell to
unaffiliated third parties, or to obtain the best possible price.  

The plain language of the contracts does not support Apache=s contention that
Versado is required to sell to unaffiliated third parties or to obtain the best
possible price for residue gas.  Nothing in the contracts requires Versado to
obtain the best price for its gas; rather the contracts only require Versado to
pay Apache a percentage of proceeds. Apache alleges, however, that the Uniform
Commercial Code (UCC) imposes on Versado the duty to perform the contract in
good faith, which would require Versado to obtain the best price for the gas.  See
Tex. Bus. & Com. Code Ann.
' 1.304.  The
failure to act in good faith under the UCC, however, does not state an
independent cause of action because the duty of good faith and fair dealing is
aimed at making effective the agreement=s promises.  N.
Nat. Gas Co. v. Conoco, Inc., 986 S.W.2d 603, 606B07 (Tex. 1998). 
The UCC defines duties that grow out of specific contract terms and
obligations.  Adolph Coors Co. v. Rodriguez, 780 S.W.2d 477, 482 (Tex.
App.CCorpus Christi
1989, writ denied) (construing former Tex.
Bus. & Com. Code Ann. ' 1.203 now
recodified as Tex. Bus. & Com. Code
Ann. ' 1.304).  In the absence of a specific duty or
obligation in the contract to which the good-faith standard can be tied, the
obligation of good faith under the UCC will not support a claim for damages.  Fetter
v. Wells Fargo Bank Texas, N.A., 110 S.W.3d 683, 689 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).








Because the contracts do not require Versado to market gas
to non-affiliates, the good faith standard of the UCC cannot be tied to an
obligation in the contract.  Because Versado is not contractually or legally
obligated to market Apache=s gas to third parties or to obtain the
best possible price, summary judgment was appropriate.  Apache=s fourth issue is
overruled.

VI.  Liquid Hydrocarbons

Versado filed a cross-appeal challenging the portion of the
trial court=s judgment in which the court declared Apache was
entitled to future payment for liquid condensate resulting from the operation
of the compressors at the locations formerly known as the North and South Eunice
Plants. 

A.      Declaratory
Judgment on Future Payments

Eleven of the contracts at issue permit Apache to be paid
for a percentage of the liquid hydrocarbon products processed at Versado=s plants.  The
contracts provide that Versado owns Aall drip,
condensate, or scrubber oil collected prior to the first stage of compression
within the plant.@  When the contracts were drafted, gas was
processed at three plants known as the North, South, and Middle Eunice plants. 
In 2000, Versado consolidated its processing facility in the Eunice gas
fields.  The North and South Eunice plants were converted to booster stations,
which are used to compress the gas and move it along the gathering system to
the Middle Eunice plant.  Versado now operates three processing plants: 
Eunice, Monument, and Saunders.

At trial, both Versado and Apache claimed they were
entitled to be paid for the liquids compressed at the North and South Eunice
booster stations.  Apache alleged the contracts unambiguously provided for
payment of liquid hydrocarbons processed through compression at Versado=s plants.  Versado
alleged that the North and South Eunice locations were no longer plants, but
booster stations, so the liquid hydrocarbons were field condensate, and, under
the contracts, were owned by Versado.








In its first issue, Versado argues the trial court erred in
granting Apache declaratory relief for future payments for liquid condensate
collected at and resulting from the operation of the compressors at the
locations now known as the North and South Eunice booster stations.  A
declaratory judgment is one that declares the rights, status, or other legal
relations of the parties.  Tex. Civ.
Prac. & Rem. Code Ann. ' 37.003.  In a
declaratory judgment action, the party asserting an affirmative claim bears the
burden of proving its allegations.  Russell v. City of Brian, 919 S.W.2d
698, 704 (Tex. App.CHouston [14th Dist.] 1996, writ denied). 
Declaratory judgments are reviewed under the same standards as other judgments
or decrees.  Tex. Civ. Prac. & Rem.
Code Ann. ' 37.010.  

Resolution of Versado=s issue requires
us to determine whether the contracts are ambiguous.  If a written contract is worded so
that it can be given a definite or certain legal meaning, then it is not
ambiguous.  Nat=l Union Fire Ins. Co., 907 S.W.2d at 520.  In each of the
contracts at issue, Aliquid hydrocarbon products@ are defined as
all hydrocarbons that are delivered to, and processed, or extracted at the
Plant.  APlant@ is defined as the
facility used to process gas, or the facility in which gas is processed.  The
contracts unambiguously provide that Apache receives payment only for liquid
hydrocarbons Asaved and sold at the Plant.@  The record
reflects that the North and South Eunice facilities no longer fall under the
contract definition of Aplant.@  Those facilities
are now booster stations that provide compression to move the gas toward the
plant where it is processed.  The contracts further provide that Versado owns Aall drip,
condensate, or scrubber oil collected prior to the first stage of compression
within the plant.@  Therefore, under the contracts, Versado
owns all drip, condensate, or scrubber oil that is collected at the North and
South Eunice stations.  The plain language of the contracts does not support
the trial court=s declaratory judgment.  Versado=s first issue on
cross-appeal is sustained.

B.      Versado=s Condensate
Overpayment








During its audit of Versado=s processing,
Apache discovered that liquid hydrocarbons had been removed from the North and
South Eunice booster stations without payment to Apache.  Versado explained that
the liquid from those stations was transported by truck to the Middle Eunice
plant where it was mixed with liquids from the plant.  Because Versado could
not segregate what liquid had been removed from the North and South Eunice
stations, it voluntarily paid Apache $338,599.47.  After Apache filed its
lawsuit, Versado filed a counterclaim seeking reimbursement for the payment
because it alleged the liquid removed from the North and South Eunice stations
was field condensate; therefore, Apache was unjustly enriched by the payment.

Versado requested, and the trial court submitted, jury
issues on Versado=s claim for reimbursement of the
$338,599.47 payment.  In Question No. 15, the jury was asked whether Apache
wrongfully retained money from Versado.  The jury was further instructed that Athe retention of
another=s money is
wrongful if the money was obtained through a mistake of fact,@ and that Amoney voluntarily
paid with full knowledge of the facts and without fraud or duress cannot be
recovered, although it was paid upon a claim without foundation.@  The jury
answered that Apache did not wrongfully retain the payment.  Versado argues
that because the contracts do not provide for payment of field condensate, the
evidence is insufficient to support the jury=s answer to
Question No. 15.

Apache argues, however, that the evidence supports the jury=s answer because
Versado voluntarily paid in the absence of fraud or duress.  Money voluntarily
paid with full knowledge of all the facts, in the absence of fraud, deception,
duress, or compulsion, cannot be recovered merely because the party at the time
of payment was ignorant of or misunderstood the law as to his liability.  Pennell
v. United Ins. Co., 150 Tex. 541, 243 S.W.2d 572, 576 (1951).  The Avoluntary-payment
rule@ is a defense to
claims asserting unjust enrichment, that is, when a plaintiff sues for
restitution claiming a payment constitutes unjust enrichment, a defendant may
respond with the voluntary-payment rule as a defense.  BMG Direct Marketing,
Inc. v. Peake, 178 S.W.3d 763, 768 (Tex. 2005).  The supreme court has
recognized the following underlying policy when applying the voluntary-payment
rule:

[A] party who pays a claim is deemed to have made his own decision that
it is justly due.  If he thinks otherwise, he should resist.  He should not pay
out his money, leading the other party to act as though the matter were closed,
and then be in a position to change his mind and invoke the aid of the courts
to get it back.

Id.
at
768B69, quoting
R.G. McClung Cotton Co. v. Cotton Concentration Co., 479 S.W.2d 733, 743
(Tex. Civ. App.CDallas 1972, writ ref=d n.r.e.).








In this case, the record reflects that Versado paid Apache
because at the time of the payment, Versado did not have the ability to
segregate the source of the liquids coming into the plant.  Clark White, the
Permian Basin Region manager for Dynegy, testified that at the time the payment
was made Versado could not adequately separate the drips that came in from the
field from the condensate that came into the first stage suction scrubber in
the plant.  He testified that, AIt all came into a common tank and we
couldn=t adequately
distinguish which was which.  Therefore, we justCwe paid
everything.@  In the settlement letter that accompanied Versado=s payment, Versado
stated that the payment was larger than future payments would be, but Versado
did not state that it made the payment under duress or protest, or that the
payment was obtained through fraud or coercion.    

At oral argument, Versado argued the voluntary-payment
defense was not available to Apache because this is a breach of contract
action.  In its counterclaim, however, Versado asserted a cause of action for
unjust enrichment, a claim for which the voluntary-payment defense is
available.  Generally speaking, when a valid, express contract covers the
subject matter of the parties= dispute, there can be no recovery under a
quasi‑contract theory, such as unjust enrichment.  Fortune Prod. Co.
v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000).  There are, however,
exceptions to this general rule.  A claim for unjust enrichment may be had
where overpayment was made under a valid contract.  See Southwestern Elec.
Power Co. v. Burlington N. R.R. Co., 966 S.W.2d 467, 469 (Tex. 1998). 
Here, Versado asserted a permissible counter-claim for unjust enrichment
because Versado alleged it overpaid under the contract.  Therefore, Apache
could assert the voluntary-payment rule as a defense to Versado=s claim of unjust
enrichment.  The evidence is sufficient to support the jury=s verdict that
Apache did not wrongfully retain the money because Versado voluntarily made the
payment.  Versado=s second issue is overruled.

 

 

 








VII.  Attorneys= Fees

A. 
Apache=s Attorneys= Fees

In its sixth issue, Apache contends the trial court erred
in awarding Apache only $75,000 in attorneys= fees because the
parties stipulated that Apache=s attorneys= fees would be
$775,000.  Prior to trial, the parties entered into a stipulation in which they
stipulated and agreed that the total amount of Apache=s reasonable and
necessary attorney=s fees from the inception of the lawsuit
to the end of trial was $775,000.  The parties further agreed that in the event
one or both of the parties filed an appeal with an intermediate appellate
court, the attorneys= fees would be an additional $50,000 and
in the event either or both parties filed a petition for review in the Texas
Supreme Court, the fees would be an additional $25,000 plus another $25,000 if
the supreme court requested briefing on the merits.

Apache argues it is entitled to all of the stipulated
attorneys= fees if this court finds Apache should prevail on the
breach of contract claim.  If a party prevails on its breach of contract claim
and recovers damages, it is entitled to attorneys= fees.  Green
Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); Tex. Civ. Prac. & Rem. Code Ann. ' 38.001.  Thus,
attorneys= fees under section 38.001 of the Texas Civil Practice
and Remedies Code are mandatory.  Bocquet v. Herring, 972 S.W.2d 19, 20
(Tex. 1998).  Versado contends that because Apache failed to segregate its
attorneys= fees, Apache is not entitled to any fees.  A failure
to segregate attorneys= fees in a case containing multiple causes
of action, only some of which entitle the recovery of attorneys= fees, can result
in the recovery of zero attorneys= fees.  Green
Int=l, Inc. v. Solis, 951 S.W.2d at
389.  In this case, however, Versado did not object to Apache=s failure to
segregate fees.  If no one objects to the fact that the attorneys= fees are not
segregated as to specific claims, the objection is waived.  Id.  Because
we have determined Apache prevails on its breach of contract claim, we find
Apache is entitled to the stipulated attorneys= fees.  Apache=s sixth issue is
sustained.

 

 








B. 
Versado=s Attorneys= Fees

In its cross-appeal, Versado argues this court should
remand to the trial court to determine what fees Versado can recover for its
success on the declaratory judgment.  Under the Declaratory Judgments Act, the
trial court has discretion to award attorneys= fees subject to
the requirements that any fees be reasonable and necessary and that the fees be
equitable and just.  Bocquet, 972 S.W.2d at 21.  Where an appellate
court finds the issue of attorneys= fees was not
determined in the trial court, that issue may be severed and remanded to the
trial court for a determination of reasonable and proper attorneys= fees.  A.V.I.
Inc. v. Heathington, 842 S.W.2d 712, 718 (Tex. App.CAmarillo 1992,
writ denied).  Because Versado has prevailed on appeal on the declaratory
judgment action, we remand to the trial court for consideration of Versado=s attorney=s fees.

VIII.  Interest

Apache filed a motion for rehearing in which it contends it
is entitled to prejudgment and post-judgment interest.  We agree.  A prevailing
party receives prejudgment interest as a matter of course.  Baker Hughes
Oilfield Operations, Inc. v. Hennig Prod. Co., 164 S.W.3d 438, 477 (Tex.
App.CHouston [14th
Dist.] 2005, no pet.).  Therefore, Apache is entitled to prejudgment interest
from the date of filing of Apache=s original
petition on May 22, 2002, to the date of the trial court=s judgment on
November 23, 2004.  See Tex. Fin.
Code Ann. ' 304.104.  Apache is further entitled to a
statutory award of post-judgment interest.  Tex.
Fin. Code Ann. ' 304.002.  Post-judgment interest on
damages, prejudgment interest, and attorneys= fees runs from
the date of the trial court=s judgment on November 23, 2004, until
paid.  See Thornal v. Cargill, Inc., 587 S.W.2d 384, 384B85 (Tex. 1979). 
Post-judgment interest on appellate attorneys= fees, however,
does not accrue until the appellate court issues its final judgment.  Protechnics
Int=l, Inc. v. Tru-Tag Systems, Inc., 843 S.W.2d 734,
736 (Tex. App.CHouston [14th Dist.] 1992, no writ).  

 

 








Conclusion

The judgment of the trial court is
modified to reflect recovery for Apache of  $1,508,674 under its breach of
contract cause of action, and recovery of its stipulated attorney=s fees.  The judgment is further
modified to delete declaratory relief in favor of  Apache on future payments
for liquid hydrocarbons.  The issue of Versado=s attorney=s fees on the declaratory judgment action is severed and
remanded for determination under section 37.009 of the Civil Practice and
Remedies Code.  The judgment is modified to reflect that Apache recover
$189,100.92 in prejudgment interest and post-judgment interest at the rate of
five percent, compounded annually, as follows: (a) on the judgment,
$2,472,774.92, from November 23, 2004 until paid; (b) on the attorneys= fees for appeal, $50,000, from the
date of this court=s final judgment until paid; (c) on
the attorneys= fees for a petition for review to
the Texas Supreme Court, $25,000 from the time the Supreme Court renders its
final judgment until paid; and (d) on the attorneys= fees for briefs on the merits in
the Supreme Court, $25,000, from the time when the Supreme Court renders its
final judgment until paid.  In all other aspects, the judgment of the trial
court is affirmed.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

Judgment rendered
and Opinion filed December 7, 2006.

Panel consists of
Chief Justice Hedges, Justice Anderson, and Senior Chief Justice Murphy.[2]










[1]  In two contracts not at issue here, unaccounted-for
gas is listed as a deduction.  Gas producers and processors may agree to
include a deduction for unaccounted-for gas when determining the volume of
residue gas for which payment is made.  Because the contracts at issue here do
not facially permit a deduction for unaccounted-for gas, the issue of the
contractual legitimacy of this deduction was an issue for the jury.





[2]  Senior Chief Justice Paul C. Murphy sitting by assignment.